No. 17,892.

INTERMOUNTAIN RURAL ELECTRIC ASSOCIATION, INC. *v.* COLORADO CENTRAL POWER COMPANY.

(307 P. [2d] 1101)

Decided March 4, 1957.   Rehearing denied March 25, 1957.

Mr. Cecil R. Ditsch, Mr. William Hedges Robinson, Jr., Mr. Emory L. O'Connell, for plaintiff in error.

Mr. Worth Allen, Mr. Charles D. Bromley, Mr. Philip A. Rouse, for defendant in error.

Messrs. Grant, Shafroth & Toll, Mr. Erl H. Ellis, Amici Curiae.

*In Department.*

Mr. Justice Knauss delivered the opinion of the Court.

The parties appear here in reverse order to their positions in the trial court. Plaintiff in error will be referred to as defendant or "Association," and defendant in error, as plaintiff. Both plaintiff and defendant are engaged in the distribution of electric power and the present action involves a conflict between them over the construction of two identical, parallel power lines of some mile and a half in length along a public highway in Jefferson County, Colorado, for the purpose of serving residents in what is known as Meadowbrook Heights Subdivision, herein referred to as "Meadowbrook."

Plaintiff sought an injunction to restrain the Associa-

tion from obstructing and hindering plaintiff in its installation of power lines in the area and for removal of lines the Association had erected, and to enjoin the Association from installing lines in excess of 300 feet from its lines as they existed on May 31, 1945, the date of an agreement claimed by plaintiff to have been entered into between plaintiff and defendant relating to the serving of customers in the area in question.

By answer the Association challenged the jurisdiction of the trial court; alleged that plaintiff applied for a certificate of public convenience and necessity in February 1930; that such certificate was granted by the Public Utilities Commission and alleged that plaintiff failed to furnish electricity for the area until April 1955. Defendant further alleged that it built lines in the area in 1942; expended in excess of $85,000 in the erection of facilities in the general area, and that plaintiff had abandoned the territory in question, and that the Association was a public utility. Trial to the court ensued in October 1955, resulting in findings and decree in favor of plaintiff, from which the Association brings the case here by writ of error.

For reversal it is urged that the Public Utilities Commission and not the District Court has jurisdiction to determine the controversy between the parties; that indispensable parties were not before the court, to-wit: the trustee and beneficiary to whom the lines of the Association were mortgaged and that the Public Utilities Commission was a necessary party to the action; that regardless of the jurisdictional questions plaintiff had lost any rights which it may have had under any certificate of public convenience and necessity by non-user, and that plaintiff consented to and encouraged the Association to serve the area in question; that plaintiff was a trespasser on the land in question, and that there was no evidence to sustain the finding by the trial court that the Association by contract had agreed not to serve the territory in question.

The trial court by its findings determined that the defendant is a cooperative association, organized as such under Colorado laws, "with power to generate, sell and distribute electrical energy to members only, except that it may serve all existing customers on lines acquired by it from public utility companies. (In this connection we note that its certificate of incorporation contains the restriction that, 'The Corporation shall render no service to or for the public.'") The trial court further found that plaintiff held a certificate of public convenience and necessity issued by the Public Utilities Commission on or about February 8, 1930, authorizing it to render electric service in certain portions of Sections 2 and 3 Township 6 South, Range 69 West of the 6th P.M. in Jefferson County, Colorado, and "particularly in that portion of the said section now known as Meadowbrook Heights and a limited surrounding area." That since February 1930, plaintiff has held itself out and actually has been in the business of an electric public utility for the distribution and sale of electricity in said area to all persons who might request that service. That during that period there has been two requests for service in that area. That the certificate of public convenience and necessity had not been revoked or cancelled and that there had been no showing of a refusal on the part of plaintiff to furnish electrical service.

Concerning the factual situation the trial court found: " * * * plaintiff company began actual construction of the electrical energy line in Meadowbrook Heights fairly early in the morning of April 7, 1955, and this construction began by installing power poles and power lines in and along the public road adjoining Meadowbrook Heights, and was continued by installing poles and wires in and along that part of the property platted as streets in Meadowbrook Heights Subdivision. After plaintiff had proceeded with this work for some two hours the defendant company through its officers and agents apparently learned what was going on, and later in the day

and about noon the defendant began approximately the same operation as was being carried on by the plaintiff and in the same place. The defendant began erecting its poles and stringing its lines on the same side of the street and immediately adjacent to the poles and lines of the plaintiff company, in fact so close as to retard and disturb the work of the plaintiff's men. In this connection we think our findings may be substantially in the wording of plaintiff's second amended complaint; that is: That the defendant company moved trucks and equipment into positions obstructing the activity of the plaintiff; that the defendant company proceeded to dig holes immediately adjacent to the holes already dug and into which poles had been installed by the plaintiff company's men; that the defendant company through its employees and agents put crossarms on their poles and these poles were so close to the poles theretofore erected by the plaintiff's employees and agents that the crossarms overlapped each other; and that the company intermingled its power wires with those installed by the plaintiff. * * * we do find that the defendant, through its officers and employees, advised the plaintiff and its officers and employees that it, the defendant, was going to energize its line immediately and that the plaintiff's employees had better look for their own safety for they might be injured, or words to that effect; and further that as soon as the defendant had its lines in place it did connect this line with an existing line of the defendant company and energized the line; that the energizing of this line was a very dangerous and unwise act, as it could have resulted in injury or even loss of human life; that the energizing of said line by the defendant made it impossible for the plaintiff to make use of its line. In fact the testimony not only shows that two electrical power lines, both energized, cannot operate so closely together, but that such condition is extremely dangerous to human life. * * * We believe the injunctive powers of a court of equity may be called into being or used at any time

to prevent a conflict whereby men may be injured or killed or property destroyed, as might have been possible in this case. We conclude that the defendant has violated the rights and privileges of the plaintiff as a public utility and that so long as defendant leaves its poles in the positions which they now occupy plaintiff is being deprived of its lawful activity as a public utility and that it has no speedy or adequate remedy at law."

The trial court found that an agreement entered into between plaintiff and defendant on May 31, 1945, whereby defendant agreed not to render electric service to consumers in the area in question other than by extension of defendant's then existing lines for not more than 300 feet, had been respected and observed by the parties for over ten years, and that this agreement "had been respected and that each of the parties have conformed thereto in their operations up until this controversy arose over Meadowbrook Heights" that the nearest service of defendant was some one and one-half miles east and north of Meadowbrook Heights.

It may be added that the record shows that Meadowbrook was not platted until 1955 and one Sabinske, owner and subdivider, requested plaintiff to furnish electric service. In March, 1955, plaintiff began its preparation of plans to install facilities for the delivery of electricity to Meadowbrook.

On the claim that plaintiff had abandoned the Meadowbrook territory, the findings of the trial court supported by competent evidence, were that there had been no abandonment thereof.

■ Courts cannot countenance conduct such as is disclosed by the record before us. What we have here is nothing more or less than a race on the part of the Association to get its lines installed ahead of those being erected by the plaintiff and to charge them with electric power, in an effort to block plaintiff's construction of its line to serve the Meadowbrook Heights area, which it claimed the right to do under its certificate of public

convenience and necessity. No such certificate had been granted to defendant authorizing it to serve the area in question, and it had no members in Meadowbrook Heights.

■ To deny injunctive relief under the circumstances disclosed by the record here would be a virtual repudiation of equitable principles as they relate to injunctive relief. Assuming, but not deciding, that the defendant Association is a public utility, it had no authority from the Public Utilities Commission to extend its lines into the territory involved and even if it had it would not be authorized to pursue the dangerous course of intermingling its electric wires with those of plaintiff. If the Association desired to serve the people in Meadowbrook Heights, it had no superior right over a rival public utility authorized by the Public Utilities Commission to furnish such service. The methods adopted by the Association as found by the trial court were not in accord with orderly legal procedure and presented a factual situation which called for the intervention of a court of equity to remedy an intolerable situation by injunctive relief. The actions of the Association, as found by the trial court, produced an extremely dangerous condition which might have resulted in injury or death to some of the plaintiff's employees or to third parties. Whether the Association is a public utility or a cooperative association adds nothing by way of justification or excuse for the conduct and conditions which the trial court found to be the result of affirmative and deliberate action on the part of defendant.

The Public Utilities Commission is a legally constituted administrative body with exclusive jurisdiction in its constituted field. In *People ex rel. v. Colorado Title and Trust Co.* and *Public Utilities Commission v. Colorado Title and Trust Co.*, 65 Colo. 472, 178 Pac. 6, we said:

"The Public Utilities Commission is not a court; but is an administrative commission, having certain dele-

gated powers, and charged with the performance of certain executive and administrative duties, and its powers are subject to the action of the Courts in matters of which the Courts have jurisdiction."

The defendant constructed its electric facilities with funds advanced by the Rural Electrification Administration, for which the defendant corporation has given its notes secured by an open mortgage on its properties.

■ There is no merit in the contention of counsel for the Association that the trustee and beneficiary under the blanket mortgage on defendant's lines and facilities were indispensable parties to the action. This question was not presented to the trial court and is here raised for the first time. The mortgagee and trustee assume no greater rights than that held by their mortgagor. Not having acquired an interest or right in the highway or in the land upon which plaintiff erected its poles, and not being deprived of any property rights, the mortgagee or trustee are not indispensable parties in an action of this kind. See *Centennial Casualty Co. v. Lacey*, 133 Colo. 357, 295 P. (2d) 690; *Gulick v. Hamilton*, 287 Ill. 367, 122 N.E. 537.

■ The agreement dated May 31, 1945, between plaintiff and defendant respecting the territory now embracing Meadowbrook Heights, was observed by the parties for more than ten years. This is not denied in the defendant's answer. The contracting parties were well within their rights in entering into this agreement, for nothing therein tended to impair the obligations of plaintiff to serve the public or the Association to serve its members. *Georgia Power Co. v. Georgia Public Service Commission*, 211 Ga. 223, 85 S.E. 2d 14. In *Memphis Elec. L. H. & P. Co. v. City of Memphis*, 271 Mo. 488, 196 S.W. 1113, it was held: "A city invested with the power to do so and having entered into a contract with a light company whereby it agrees not to erect or acquire a competing plant may be enjoined from violating such contract."

50

■ There was no evidence before the trial court that plaintiff was a trespasser on the lands where it erected its poles. Were it otherwise it would avail defendant nothing since it did not own the land in question. This issue was also resolved in favor of plaintiff by the trial court.

Basically the claim of defendant is that it can escape the trial court's jurisdiction by claiming public utility status. If it be a public utility then its operations as detailed herein were in contravention of the laws of this state pertaining to public utilities. A cooperative enjoys freedom from certain regulations and controls of the Public Utilities Commission. Giving full credence to the several defenses urged by defendant in its answer when viewed in the light of the undisputed facts, cannot serve defendant in an attempt to evade the consequences of its unlawful acts as disclosed by this record, reminiscent of the railroad wars of the 1870's.

Whether defendant is a public utility or not is immaterial in determining the matter before us. We hold that the trial court had jurisdiction of the subject-matter and of the parties, and could not do otherwise than restrain the unlawful acts and conduct of defendant.

Observing no prejudicial error in the record the judgment of the trial court is affirmed.

CHIEF JUSTICE MOORE, JUSTICE DAY and JUSTICE FRANTZ concur.