No. 19,931.

WARD TRANSPORT, INC., ET AL., *v.* THE PUBLIC UTILITIES
COMMISSION OF COLORADO.

(376 P. [2d] 166)

Decided November 13, 1962.

Messrs. JONES, MEIKLEJOHN, KILROY & KEHL, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. Hickey, Deputy, Mr. John J. Conway, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

One Rogers, a resident of Manassa, made application to the Public Utilities Commission of the State of Colorado (hereinafter referred to as the Commission) to extend his trucking operations as theretofore authorized under Private Carrier Permit No. B-2505 to include the additional right to transport gasoline from La Junta to Manassa and diesel fuel and fuel oil from the Skelly refinery near Derby to Manassa, all of this proposed additional service to be rendered for one person only, namely Donald J. Jarvies, doing business as Donald's Service, a wholesale and retail gasoline outlet in Manassa.

Ward Transport, Inc., Melton Transport Company, Denver Chicago Transport Company, Inc., Wright Motor Lines, Inc., M. & M. Oil and Transportation, all Colorado Corporations, and Barlow Service Division of Consolidated Freightways Corporation of Delaware appeared at the hearing before the Commission and protested the application. The Commission, however, granted Rogers' application and authorized him to transport gasoline from La Junta, and diesel oil and fuel oil from the Skelly refinery in Derby, to Donald's Service in Manassa.

Thereafter the protestants filed an action in the district court seeking judicial review of the administrative order and specifically requested the court to "reverse, set aside and hold for naught" the aforementioned order of the Commission. The trial court, however, affirmed the award and order of the Commission and the protesting corporations are here by writ of error seeking reversal of the judgment.

The protestants generally contend that the evidence before the Commission was legally insufficient to justify and support its findings, and specifically assign as error the alleged failure of Rogers to establish:

1. that the transportation sought to be performed by him is within the definition of "Private Carrier by Motor Vehicle" as defined in C.R.S. '53, 115-11-1;

2. the "existence of a present or future private or personal need for the proposed service";

3. either the "inadequacy of the existing public service by motor vehicle common carriers then serving the same territory over the same general highway," or that the proposed operation will not impair the efficient public service of any authorized motor vehicle common carrier then serving the same territory over the same route; and

4. that he is "fit, willing and able to perform the proposed service."

Before briefly reviewing the evidence adduced upon hearing before the Commission, it is deemed helpful to refer to the statute under which the application was made. C.R.S. '53, 115-11-3 provides, in part, as follows:

"It shall be unlawful for any private carrier by motor vehicle, . . . . to engage in or transact the business of transporting passengers, freight, merchandise or other property over the public highway of the State of Colorado, without first having obtained a permit therefor from the public utilities commission of the state of Colorado . . . the commission is hereby vested with the authority to issue a permit to a private carrier by motor vehicle. . . . No application for permit, nor for any extension, or enlargement of an existing permit, shall be granted by the commission until after a hearing, nor shall any such permit, nor any extension or enlargement thereof, be granted if the commission shall be of the opinion that the proposed operation of any such private carrier will impair the efficient public service of any authorized motor vehicle common carrier or car-

riers then adequately serving the same territory over the same general highway route or routes. . . . This article shall not apply to any motor vehicle as defined by section 115-9-1, [relating to common carrier], nor shall anything herein contained be construed or applied so as to compel a private carrier by motor vehicle to be or become a common carrier, or to subject such common carrier by motor vehicle to the laws of liability to a common carrier."

At the hearing before the Commission on July 21, 1960, Jarvies testified that he was the owner and operator of a wholesale and retail gas outlet in Manassa and that Ward Transport, Inc., headquartered in Pueblo, was as of that date hauling his fuel in Ward owned and operated equipment. Jarvies added, however, that he owned a truck tank himself and desired that Rogers, using his (Rogers') tractor, should pull this truck tank and deliver gasoline from La Junta and diesel and fuel oil from the refinery in Derby to his station in Manassa. Jarvies opined that in his best judgment it would be desirable and helpful to have his carrier based in Manassa. Accordingly, Jarvies stated that he specifically requested Rogers to file the application here under consideration.

Rogers testified that his financial statement was already on file with the Commission and that although he did not presently have a truck tank to handle the requested service, he proposed to use Jarvies' truck tank if granted the authority for which he had made application. He added that he owned a tractor which would pull Jarvies' truck tank. Rogers concluded by stating that he made the application only at the specific behest of Jarvies and that he had no desire to serve anyone other than Jarvies.

The applicant then "rested," whereupon the protestants called three witnesses. The president of Ward Transport, Inc., testified that his company was an intrastate and interstate common carrier with authority to

haul petroleum products between all points in Colorado. At the instance of the Skelly refinery in Derby this company was presently hauling petroleum products to Jarvies and the "total revenue" for such service in the first half of 1960 was $4,511.40. This witness identified a profit and loss statement which reflected that the company during the first six months of 1960 also suffered a loss in the amount of $12,650.33, this statement including both their interstate and intrastate operations. This same witness stated that if deprived of this revenue it would cause the company's equipment "to be idle more and reduce the amount of profit, if any is involved." He concluded with the general observation that "any carrier that operates at a loss over too long a period, sooner or later his services will have to be curtailed. . . . "

The general traffic manager of Denver Chicago Transport Co. with considerable candor stated that part of his official duty was to "process" all of Denver Chicago's applications for trucking authority, but to "protest" all other applications. His company was also a common carrier with authority to haul petroleum products anywhere in Colorado, and though the company did not presently haul for Jarvies, he nonetheless regarded it as "potential" business.

The manager of Consolidated Freightways pointed up what is deemed to be the real issue in the case when he testified, inter alia, as follows:

"My company has a good many million dollars invested in the common carriage business in Colorado. . . . I have never personally solicited Mr. Jarvies' business because it has always been my understanding that Skelly controlled the account. I do solicit Skelly constantly for their business. Obviously I have never had this account regularly or if I had it and lost it, it would not break my company. *But if specialized permits, such as this, are granted frequently, it adversely affects the (total) amount of products that are available to be*

*moved on a common carriage basis. . . ."* (Emphasis supplied.)

The protestants challenge the findings of the Commission in the four particulars mentioned above, and urge that the evidence is legally insufficient to support these findings and the award based thereon.

It is initially argued by the protestants that Rogers did not establish that he was a "private" motor carrier as defined in C.R.S. '53, 115-11-1 and that actually he is a "common" carrier as defined in C.R.S. '53, 115-9-1. Rogers in turn contends that he does not "hold himself out to serve the general public," and does not, and in fact cannot, "indiscriminately accept" freight from any or all shippers, and therefore he is truly a "private" motor carrier.

In *McKay v. Public Utilities Commission,* 104 Colo. 402, 91 P. (2d) 965 it was said:

" . . . Indiscriminately accepting freight is undoubtedly one of the important tests in ascertaining whether or not a certain operation has the elements of a common carrier. . . . A private carrier of goods has been defined as one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire, or reward, but this definition is not strictly correct in so far as it implies that one who does not carry for hire or reward is not a private carrier; and more accurately stated, a private carrier is one who, without making it a vocation, or holding himself out to the public as ready to act for all who desire his services, undertakes, by special agreement in a particular instance only, to transport property from one place to another either gratuitously or for hire. He carries only for persons with whom he has an initial contract, and assumes no obligation to carry for others; and in this lies the chief distinction between a private carrier and a common carrier, . . ."

Also, in *Ace-High Dresses, Inc., v. J. C. Trucking*

*Co., Inc.,* 122 Conn. 578, 191 A. 536 it was succinctly stated:

" . . . The fundamental distinction is that the private carrier enters into a contract with each of his customers and assumes no obligation to carry for any other, while the common carrier undertakes to carry for all persons indifferently. The one is a contract carrier, the other carries without contract other than that implied from his public undertaking to carry for all."

Finally, see *McDill v. North Eastern Motor Freight, Inc.,* 92 Colo. 198, 19 P. (2d) 204 where it was held that a motor vehicle operator engaged in the transportation of freight for hire under contracts with various individuals was not a common carrier "because he did not hold himself out as willing to, and did not in fact, accept freight for transportation for hire indiscriminately for all who might or did seek such service."

Under the foregoing authorities we conclude that Rogers is a private carrier, and the contention of the protestants that he is a common carrier is without merit.

■ Protestants next argue that from a procedural standpoint the Commission erroneously placed on them the burden to show that their "efficient public service" would be "impaired" by the granting of Rogers' application, whereas under the applicable statute (C.R.S. '53, 115-11-3) Rogers, being the applicant, had the burden of showing "no impairment" to the existing public service rendered by the common carriers then serving the area. Counsel for the Commission deny that the "burden of proof" was in fact placed on the protestants, but contend that in any event under the circumstances the question is of only academic interest. It is pointed out that when Rogers "rested his case," the protestants did not elect to stand on the record as made by the applicant, but proceeded to present evidence presumably designed to be in support of their protest. Such being the state of the record, we agree that the real issue is

whether on the *entire* record the findings and award of the Commission are within its statutory authority.

■ Without unduly prolonging this opinion, careful review of the record convinces us that there is evidence of sufficient substance to support the award of the Commission and that the Commission was justified in its specific findings that Rogers is operating as a "private carrier by motor vehicle"; that there is a "present or future private or personal need for the proposed service"; that the proposed operation "will not impair the efficient public service" of common carriers then operating in the same general area; and that Rogers is "fit, willing and able to perform the proposed service."

Under such circumstances the judgment of the trial court affirming the award of the Commission should be and hereby is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SUTTON concur.