No. 21694.

Southeast Colorado Power Association *v.* The Public Utilities Commission of the State of Colorado and City of Lamar.
(428 P.2d 939)

Decided June 12, 1967. Rehearing denied July 17, 1967.

Carl M. Shinn, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Robert Lee Kessler, Assistant, for defendant in error the Public Utilities Commission of the State of Colorado.

John R. Barry, for defendant in error City of Lamar.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

THIS is a dispute between the Southeast Colorado Power Association, a Colorado corporation which will hereinafter be referred to as Southeast, and the City of Lamar and its Utility Board. The dispute is as to which one of these two utilities shall serve a new installation of the American Telephone & Telegraph Company located some nine and one-half miles south of the city of Lamar.

The new telephone installation which is the cause of this controversy is located within certain territory to which Lamar holds a certificate of public convenience and necessity granted by the Public Utilities Commission in 1943. When it became apparent that Lamar proposed to serve this new installation, Southeast made formal complaint to the Commission. Southeast contended, among other things, that Lamar had abandoned any rights under the aforementioned certificate it may once have possessed to serve the particular area where the new telephone installation was then being built. Additionally Southeast sought an order from the Commission permitting and authorizing it, rather than Lamar, to serve the new telephone installation.

Upon hearing, the Commission found as a matter of fact that Lamar had *not* abandoned its certificated area, or any part thereof. Accordingly, the Commission denied the relief prayed for by Southeast and dismissed its complaint, with the observation that the Commission intended to "honor" its certificate.

Southeast thereafter sought and obtained judicial review of this administrative action. The trial court upheld the action of the Commission. In so doing the trial court observed that under well settled rules the factual determination by the Commission that there had been no abandonment by Lamar of its right to serve its certificated area could not, under the circumstances, be disturbed by the court upon review. By writ of error Southeast now seeks reversal of the judgment affirming the action of the Commission.

On the issue of abandonment, Southeast's position, of necessity, is that the Commission erred for the reason that abandonment had been proven, and *as a matter of law*. We do not so view the matter. We agree with the trial court that the issue of abandonment was an issue of fact, not one of law. The fact-finding body having made its determination, courts are not at liberty to set such determination aside, if there be evidence to support it. *Ward Transport, Inc. v. The Public Utilities Commission of Colorado*, 151 Colo. 76, 376 P.2d 166. And in the instant case we find that there is such supporting evidence.

We concede that there was some evidence before the Commission which perhaps looked toward a finding of abandonment by Lamar to Southeast of its right to serve in that portion of its certificated area where the newly built telephone installation is located. At least there is certain evidentiary matter in the record which would support such an inference.

At the same time, it should be noted that there also was evidence which does support the Commission's determination that Lamar had not abandoned its certificated rights. And there was no evidence in the record of Lamar ever *refusing* to serve a would-be customer in the disputed area. The Commission was obviously impressed with the fact that there was "no evidence that it [Lamar] has in times past refused to serve," noting further that "if the City had refused service to any customer, then our findings would necessarily be changed."

A bit more of the detail is perhaps necessary to place the controversy in better focus. The geographical area with which we are here concerned is a more-or-less rectangular tract of land located directly south of the city of Lamar. In size, it is about 6 miles running east and west, and about 13 miles running north and south. This particular area is very sparsely settled, and is devoted primarily to farm and ranch purposes. In that

area Lamar has some 34 service outlets, most, if not all of which, are located in the northern part of this particular area. As of the date of the hearing Southeast had only 6 active services in the entire area, all of which were located in the southern part of the disputed area. Parenthetically, it should be noted that the telephone installation is located in the southern part of the certificated area. But, as already noted, even though Lamar's outlets are in the northern half of the area, so far as the record indicates Lamar never has refused service to any one located within the entire area, be it the northern or southern portion.

Southeast initially "went into" Lamar's certified territory at a time when it was not under the Commission's control or regulation. In this circumstance it is not surprising, then, that its customers were located in the southern and more remote part of Lamar's certificated area. This fact in and of itself, however, did not in any manner affect Lamar's certificated rights.

For all these reasons we conclude that there is evidence which supports the determination made by the Commission. In such circumstance we have no alternative but to uphold the Commission, as the Commission, and not this court, is the body charged with the responsibility of resolving such a factual dispute.

Additionally, Southeast claims the right to test, at this time, the propriety of the initial issuance in 1943 by the Commission to Lamar of the aforementioned certificate of necessity and convenience. Apparently, Southeast did appear before the Commission in 1943 to contest Lamar's position. The Commission at that time ruled that Southeast was not a "utility" within the meaning of the law, and held that it had no standing to appear and participate in that proceeding. No judicial review of the Commission's ruling in this regard was ever sought. Nor was there any review of the Commission's order granting Lamar the aforementioned certificate of convenience and necessity. The fact that by

action of the General Assembly in 1961 Southeast was brought under the jurisdiction of the Commission does not permit it to now make collateral attack on the Commission's action which occurred some twenty-five years ago. At least our attention has not been directed to any authority permitting this matter to be reopened at this late date.

 Finally, complaint is also made that the Commission erred in allegedly thwarting Southeast's effort to take the deposition by means of written interrogatories of two witnesses employed by the telephone company in Kansas City, Missouri. The Commission quashed Southeast's notice to take the deposition upon written interrogatories because of Southeast's failure to serve notice upon the Commission, as well as Lamar. For all practical purposes Southeast then let the matter drop. In other words, *if* Southeast had thereafter served notice on the Commission, as well as Lamar, it could have presumably taken these depositions. This Southeast did not do, apparently preferring to "stand" on the record. Be that as it may, it is sufficient to say that all things considered, if there be any error in this regard, there is nothing in the record to indicate that any prejudice resulted therefrom.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

Mr. Justice McWilliams:

In its Petition for Rehearing Southeast asserts that the so-called "Gentlemen's Agreement" between Southeast and Lamar is an enforceable contract and that this contract in and of itself is dispositive of the entire case. In thus asserting Southeast relies on *Intermountain Rural Electric Association, Inc. v. Colorado Central Power Co.* 135 Colo. 42, 307 P.2d 1101.

In our view the instant case is quite different from the *Intermountain* case in that the contract there under con-

sideration was found to be one which in nowise tended to impair the obligation of a public utility to serve the public. Furthermore, according to the briefs filed in the *Intermountain* case by both parties, the contract there under consideration was approved by the Public Utilities Commission.

Such, then, is a factual situation markedly different from that with which we are here concerned. In the instant case the Agreement most certainly would tend to impair the obligation of Lamar to serve the public. Moreover, the Agreement itself expressly provided that it must be approved by the Public Utilities Commission, and there is nothing in the record before us which would indicate that the Agreement was even considered, let alone approved, by the Public Utilities Commission.

Therefore, contrary to Southeast's assertion in its Petition for Rehearing, the "Gentlemen's Agreement" between Southeast and Lamar is not, as a matter of pure contract law, dispositive of the instant controversy. Evidence concerning the Agreement was received as having some bearing on the general issue of abandonment, but such evidence in and of itself was not controlling.

The Petition for Rehearing is denied.

All Justices concur in the foregoing.