No. 23324.

OVERLAND MOTOR EXPRESS, INC., DOING BUSINESS AS BOULDER-DENVER TRUCK LINE *v.* KINGERY TRANSPORTATION CO., ERNEST J. TRENBERTH, WALTER A. SMITH; THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO, AND HENRY E. ZARLENGO, RALPH C. HORTON AND HOWARD S. BJELLAND, INDIVIDUALLY AND AS MEMBERS THEREOF; AND CONTRACT CARRIERS CONFERENCE OF THE COLORADO MOTOR CARRIERS' ASSOCIATION.

(445 P.2d 713)

Decided October 7, 1968.

JOHN P. THOMPSON, for plaintiff in error.

HERBERT M. BOYLE, for defendant in error Kingery Transportation Co.

DUKE W. DUNBAR, Attorney General, ROBERT LEE KESSLER, Assistant, for defendant in error Public Utilities Commission.

JOHN J. CONWAY, for defendant in error Contract Carriers Conference of the Colorado Motor Carriers' Association.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THIS matter arose with a complaint filed with the Public Utilities Commission under which plaintiff in error, referred to as "Boulder-Denver," and Denver Climax Truck Line, Inc., sought to have revoked the private carrier permit of Kingery Transportation Co. referred to as "Kingery." After hearing the Commission refused the requested relief and the District Court upheld the Commission's ruling. We affirm.

The private permit involved authorized the transportation of "freight, between Leadville, Colorado, and Boulder, Colorado Springs, and intermediate points, including mining districts of Georgetown, Silver Plume, Central City, Blackhawk and Idaho Springs, via Colorado 91, 119, U.S. 40, 85, 285 and Colorado 7."

Kingery was incorporated in 1960 and this permit was transferred to it with Commission approval. At about the same time Ernest J. Trenberth, here referred to as "Trenberth," and his wife acquired all of the capital stock of Kingery, each obtaining 2,500 shares. From 1960 to 1966 Trenberth was president and manager of Kingery. During these years the Kingery office was maintained at Idaho Springs and the principal haulage under the permit was of mining supplies, ore and concentrates in the Idaho Springs area and to the smelter at Leadville. By 1966 many of Kingery's customers had curtailed or ceased mining operations. Trenberth, in the meantime, had developed a heart condition and he desired to cease the active management of the business. Knowing of Trenberth's desire, Walter A. Smith and Kenneth Crowley approached him. As a result of this contact, Mrs. Trenberth sold 2,000 shares of her stock to Crowley (being 40% of all outstanding capital stock). Crowley then became a director and treasurer of Kingery and loaned it $2,000 as necessary operating capital. Trenberth continued as a director and president of the corporation. At the same time Trenberth, as president, and acting for the board of directors, employed Smith as manager of Kingery at a flat salary.

Under the new management Kingery's office was moved from Idaho Springs to Denver and a new bank account of the corporation was established in Boulder, Colorado, with checks being signed by Smith, also requiring the signature of one of the corporate officers. As a practical matter, thereafter Smith and Crowley signed most of the checks.

Kingery's haulage was changed in that it did not confine itself to the Idaho Springs area: rather, it transported commodities between Boulder and Denver and to points more in competition with the daily line-haul service of Denver Climax Truck Line, Inc., from Denver to Idaho Springs and intermediate points to Climax. The Trenberths continued to live in Idaho Springs and Smith

reported to Trenberth over the telephone concerning Kingery. By the time of the hearing before the Commission on September 20, 1966, Smith had left the employment of Kingery.

The complaint alleged and the complainants contended that effective control of the corporation had been transferred without authorization of the Commission in violation of C.R.S. 1963 115-11-4 and the Commission's Private Carrier Rule No. 6; and that, in any event, the use of the private permit for any haulage other than in the Idaho Springs area had been abandoned. At the conclusion of the hearing before the Commission, Boulder-Denver moved to amend the complaint to allege that Kingery was entitled only to operate as to traffic originating or terminating at Leadville, and to amend the prayer of the complaint to ask that Kingery be ordered to "desist from transporting any traffic except such things that originate or terminate at Leadville." The motion to amend was denied. The Commission found that the complainants had not established by a preponderance of the evidence that there had been a transfer of effective control of the corporation nor that the permit had been abandoned.

Boulder-Denver charged error in two particulars: (1) The failure of the Commission to find that there was an unauthorized transfer of effective control of the corporation; and (2) The Commission's failure to restrict the use of the permit.

██ There was substantial competent evidence in the record to support the conclusion that there was not an unauthorized transfer and that there was no abandonment. Therefore, we must and do affirm. C.R.S. 1963, 115-6-15; *Ward Transport, Inc. v. PUC*, 151 Colo. 76, 376 P.2d 166; *PUC, et al. v. Watson*, 133 Colo. 108, 330 P.2d 138. Trenberth did not surrender his duties as president and director of the corporation and he and his wife continued to be majority stockholders. Mrs. Eshe, manager of Denver Climax Truck Lines, Inc., testified that

Smith's duties as manager were similar to hers. It is quite apparent that there was not a transfer of control.

■ Boulder-Denver did not assign as error the denial by the Commission of the motion to amend the complaint. As a result of the Commission's action in this respect, the contention of Boulder-Denver that the permit should be restricted has not been before the Commission, the District Court nor us.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE MCWILLIAMS concur.