See also D.C., 303 F.Supp. 1078.

MUNITIONS CARRIERS CONFERENCE, INC., Consolidated Freightways, Pacific Intermountain Express, Riss & Company, Inc., Tri-State Motor Transit Company, Illinois California Express, Inc., Ringsby Truck Lines, Inc., and IML Freight, Inc., Plaintiffs-Appellees,

v.

AMERICAN FARM LINES, a Cooperative Marketing Association, Howard McCormack and E. E. Strohfield, Defendants-Appellants,

and

Interstate Commerce Commission, Intervenor-Appellee.

Nos. 10177, 10178.

United States Court of Appeals Tenth Circuit.

July 30, 1969.

Rehearing Denied Sept. 3, 1969.

James M. Robinson, Oklahoma City, Okl., for appellants.

Grey W. Satterfield, Oklahoma City, Okl., for appellees.

Harry F. Horak, Fort Worth, Tex. (J. F. Walker, Fort Worth, Tex., and Bernard A. Gould, Washington, D.C., on the brief), for intervenor-appellee.

Before PHILLIPS, SETH, and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This consolidated case comes to us on the appeal of three judgments entered by the United States District Court for the Western District of Oklahoma in two separate cases. Two judgments were entered in favor of appellees Munitions Carriers Conference, Inc., and several other motor carriers, enjoining appellants American Farm Lines, and two of its employees, from continuing certain carrier operations. The other judgment was entered in favor of the appellee Interstate Commerce Commission which intervened in each case.

Munitions Carriers is an association of motor carriers licensed to transport Classes A and B explosives under authority granted by the Interstate Commerce Commission, an agency of the United States Government. The other appellees herein are motor carriers engaged in the same occupation.

American Farm Lines is a cooperative marketing association incorporated under the laws of the State of Oklahoma.

At the time of the initial action American Farm Lines was engaged in hauling government freight and Classes A and B explosives on government bills of lading in interstate commerce. American Farm Lines is authorized to transport farm to market and market to farm products for the use and benefit of it agrarian members.

The initial action was filed on December 8, 1967, and the resulting judgment permanently enjoined American Farm Lines, its General Manager, Howard McCormack, and its government division director, E. E. Strohfield, from transporting in interstate or foreign commerce as motor carriers over and upon the public highways for compensation, the following commodities: (1) Classes A or B explosives on government bills of lading in roundtrip (back-to-back) movements; (2) Classes A or B explosives on government bills of lading in connection with the transportation of other freight shipped on government bills of lading in roundtrip (back-to-back) movements; (3) freight shipped on government bills of lading in roundtrip (back-to-back) movements. The judgment proscribed these operations until such time as authorized by the I.C.C.

Approximately three months later the court granted the I.C.C.'s motion for summary judgment in the same case and permanently enjoined appellants from transporting explosives for the government in connection with the movement of non-exempt, non-member traffic in the reverse direction in interstate or foreign commerce for compensation unless authorized to do so by the I.C.C.

Thereafter, on April 16, 1968, the plaintiffs (appellees herein) and three additional motor carriers filed the succeeding action against the defendants (appellants herein). The I.C.C. again intervened. This action terminated in a

summary judgment filed May 28, 1968, which enjoined American Farm Lines and their named employees from the for-hire transportation in interstate or foreign commerce of any products other than those products mentioned in 12 U.S.C. § 1141j except when proceeding outbound to pick up and transport market to farm products or in returning from farm to market delivery with an otherwise empty vehicle. As in the preceding judgments this proscription was conditioned upon subsequent authorization of the enjoined transportation by the I.C.C.

■ On January 24, 1968, prior to the challenged judgments, the I.C.C. filed notice of institution of administrative proceedings in relation to American Farm Lines and its identified employees. The notice purported to exclude from consideration, in the administrative hearings, the issues then before the trial court. I.C.C. briefs filed herein also proclaim this intent. The contemporaneous construction placed by the Commission upon the provisions of the I.C.C. Act are entitled to great weight and respect and will not be overturned unless they are arbitrary or plainly erroneous.[1]

Appellants challenge the jurisdiction of the court on the grounds that the acts complained of were not a clear and patent violation of the Interstate Commerce Act.

Jurisdiction in both actions is based upon 49 U.S.C. § 322(b) (2).[2] This statute gives the court jurisdiction over "clear and patent" violations of certain sections of the Interstate Commerce Act requiring certification or licensing of motor carriers.

49 U.S.C. § 303(b) (5) [3] is the provision in the I.C.C. code which excludes from regulation motor vehicles controlled and operated by cooperative associations.

The provisions applicable at the time of trial and the 1968 amendment to § 303(b) (5) each limit the application of the exemption to "a federation [possessing] no greater powers or purposes than cooperative associations so defined, * * *."

The definition of cooperative association is found in the Agricultural Marketing Act of June 15, 1929. The definition, now contained in 12 U.S.C. § 1141j (a), establishes that a cooperative association must be an association (1) "in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged * * *." (2) "That [is] operated for the mutual benefit of the members thereof as such producers or purchasers * * *." and (3) "[that] conform[s] to one or both of the following requirements:

First: That no member * * * is allowed more than one vote * * * Second: That the association does not pay dividends * * * in excess of 8 per centum per annum. And in any case to the following: Third. That the association shall not deal in farm products, farm supplies, and farm busi-

---

1. I. C. C. v. Weldon, 90 F.Supp. 873, 877 (W.D.Tenn.1950), aff'd per curiam, 188 F.2d 367 (6th Cir.), cert. denied, 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 625 (1951); accord, East Texas Motor Freight Lines, Inc. v. Frozen Food Express, 351 U.S. 49, 54, 76 S.Ct. 574, 100 L.Ed. 917 (1956).

2. 49 U.S.C. § 322(b) (2) provides: "If any person operates in clear and patent violation of any provisions of section 303 (c), 306, 309, or 311 [which require persons dealing in interstate commerce by motor vehicle to obtain a certificate or license] of this title, or any rule, regulation, requirement, or order thereun-

der, any person injured thereby may apply to the district court * * * for the enforcement of such section, or of such rule, regulation, requirement, or order."

3. 49 U.S.C. § 303(b) provides: "Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act. * * *."

ness services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members. All business transacted by any cooperative association for or on behalf of the United States or any agency or instrumentality thereof shall be disregarded in determining the volume of member and nonmember business transacted by such association."

Appellants rely heavily on the last sentence of the third requirement above set out and contend that this provision exempts them under 49 U.S.C. § 303(b)(5) as amended.

■ The "incidental and necessary" test recently adopted by this court[4] teaches "that the transportation activities of a cooperative must be incidental to its primary statutory activity and necessary to the effective performance of that activity."[5]

The primary statutory activity of producing and purchasing of farm products is set out in 12 U.S.C. § 1141j(a) above quoted. Section 1141j(a) also provides that cooperative associations must be operated for the mutual benefit of the members as such producers or purchasers. In addition, such associations must conform to the three requirements set out in § 1141j(a) including the requirement containing the provision relied upon by appellants. These three requirements are not the primary statutory activities but are limitations. Therefore the incidental and necessary test as applied directs itself to an examination and conclusion of whether or not the exclusive carrying of explosives or other government property for the government is incidental and necessary to the defined activities of the cooperative.

The order of the trial court permits the transportation of government property for either an outbound or an inbound trip of a carrier when its farm to market or market to farm produce is carried on the other half of the trip.

We recognize the economic advantage to the appellant's transportation business by permitting the exclusive transportation of government property in both directions. However, we cannot find it described in the primary activities described in the provisions of the act.

Justification for the favored position of farm marketing cooperatives is based upon the necessity of making the cooperative efforts of the agrarian community competitive in the market place.[6] However, we have said, "back-to-back hauling of general commodities for nonmembers throughout the United States by motor vehicles on a for-hire basis * * * [is] not incidental to the [business of the cooperative.]"[7] Transportation of government commodities not incidental to the agrarian well-being cannot be said to be a primary activity of the cooperative.

We conclude, from a review of the record of the first proceeding, that no genuine issue as to any material fact existed. Accordingly, the I.C.C. was entitled to a summary judgment as a matter of law pursuant to Fed.R.Civ.P. 56(c).

■ The transportation proscribed by the trial court was not exempted under § 303(b)(5), therefore, the clear and patent violation of § 322(b)(2) is made evident by the above recited conclusion of this court. The trial court's conclusion of initial jurisdiction is therefore affirmed and its judgment and findings are affirmed.

---

4. I. C. C. v. Milk Producers Marketing Co., 405 F.2d 639 (10th Cir. 1969). The "incidental and necessary" test was also made a part of 49 U.S.C. § 303(b)(5) by the 1968 amendment.

5. *Id.* at 641.

6. 12 U.S.C. § 1141j(a) provides that it is the policy of Congress to place the industry of agriculture on a basis of economic equality with other industries.

7. I. C. C. v. Milk Producers Marketing Co., 405 F.2d 639, 641–642 (10th Cir. 1969).