440 F.2d 944
 MUNITIONS CARRIERS CONFERENCE, INC., Consolidated
Freightways, Pacific Intermountain Express, Riss & Company,
Inc., Tri-State Motor Transit Company, Illinois California
Express, Inc., Ringsby Truck Lines, Inc., and IML Freight,
Inc., Plaintiffs-Appellees,
v.
AMERICAN FARM LINES, a Cooperative Marketing Association,
Howard McCormack and E. E. Strohfield,
Defendants-Appellants, Interstate
Commerce Commission,
Intervenor-Appellee.
 Nos. 629-69 and 72-70.
 United States Court of Appeals, Tenth Circuit.
 March 30, 1971, Rehearing Denied May 25, 1971.
 
 James M. Robinson, Oklahoma City, Okl., for appellants.
 Grey W. Satterfield, Oklahoma City, Okl., for appellees.
 Harry F. Horak, Kansas City, Mo., for intervenor.
 Before HILL and SETH, Circuit Judges, and DOYLE, District Judge.
 HILL, Circuit Judge.
 
 
 1
 The appeal is from an order finding appellants to be in contemptuous violation of a permanent injunction.[1] We will not attempt to reiterate the facts as stated in our decision affirming the order granting the permanent injunction, but it is necessary for a proper understanding of the case to set out in some detail the procedural events that are important to a decision here.
 
 
 2
 After the issuance of the permanent injunction on May 20, 1968, by the United States District Court in the Western District of Oklahoma,[2] the appellees here, through their counsel, conducted an inspection of the books and records of American Farm Lines covering the months of September, October, November and December of 1968. The results of this inspection form the factual basis leading to the issuance of the contempt order. These facts will be set out in some detail later in this opinion.
 
 
 3
 The original injunction order contained, among other provisions, the following: 'Said injunction shall remain in full force and effect until such time, if at all, as there is in force with respect to said defendants, appropriate authority from the Interstate Commerce Commission authorizing them to engage in such operations.'
 
 
 4
 On September 3, 1968, pursuant to an application by American Farm Lines, the Interstate Commerce Commission issued a grant of authority to American Farm Lines concerning the operations that had been enjoined. This grant of authority continued until October 3, 1968, when Judge Boldt of the Western District of Washington stayed the same pending the outcome of a case filed in the Washington district entitled Blackball Freight Service et al. v. United States et al., reported in 298 F.Supp. 1006. On December 19, 1968, the Interstate Commerce Commission, apparently in an attempt to correct procedural deficiencies alleged to have been contained in the September 3 grant of authority, issued a second grant of authority to American Farm Lines covering the same subject matter as covered by the September 3 grant. This grant of authority remained in effect until January 6, 1969 when Judge Boldt, in the case set out above, stayed the second order of the I.C.C. pending final disposition of that case by a three-judge court. On March 26, 1969, the three-judge court entered a final judgment in the case holding both the September 3 and December 19 grants of authority to be null and void. That case was appealed to the Supreme Court, and on April 20, 1970, that Court, in American Farm Lines v. Blackball Freight Service, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547, reversed the decision of the three-judge court.
 
 
 5
 The appellants now urge three points: One, the trial court lacked jurisdiction to hear or decide any issue of contempt based upon the injunctive order of May 28, 1968, because that order was dissolved by its own terms by the I.C.C. grant of authority on September 3, 1968; two, the trial court erred in concluding that the activities of A.F.L. constituted willful and intentional violation of the May 28 injunctive order; and, three, the trial court erred in awarding damages in the contempt proceeding absent evidence of the causal relationship between the alleged contemptuous acts and the injury alleged, and the award is grossly inequitable in light of subsequent developments.
 
 
 6
 Appellees urge us not to consider point one because it was not raised in the trial court, but was raised for the first time in this court. Appellants contend, however, that the question goes to the jurisdiction of the court and may be raised at any stage of the case. That is a correct statement of the law provided we are talking about jurisdiction over the subject matter of the case. Without question, the trial court had jurisdiction over the subject matter, that is, the jurisdiction to determine whether appellants were in contempt of its order. Actually the point raises only an affirmative defense to the Order to Show Cause. It should have been specifically pleaded in the Answer to the Show Cause Order or raised in the trial court by some other appropriate means. It was not so raised and we refrain from considering the issue.
 
 
 7
 The appellees, by their evidence adduced during the contempt hearing, attempted to prove six types of violations, and, under the findings of fact by the trial judge, three types of violations were found. First, the so-called 'long layover' moves. These movements were of government freight from the east to the west coast; in most instances the unloading was at Bangor, Washington, and then followed by 'deadhead' (empty) movements of approximately 850 miles to the San Francisco Bay area. In all of these instances, there were layovers of from 60 to 265 hours in the Bay area before the trucks in question obtained eastbound member loads. The second type of moves found by the trial court to violate the injunction were the 'sandwich' moves and each comprised a movement with the same tractor and trailer of a load of government freight from the central portion of the United States to some military installation in Utah. After the unloading of the government freight, the vehicle would then deadhead a short distance and pick up grain from the A.F.L. member in central Utah, and then deliver the same to a point in southern California. The tractor-trailer unit would then deadhead to another government installation in California to load more government freight and return eastward to the central part of the United States.
 
 
 8
 The court found, with respect to the 'long layover' movements 'that defendants were in contemptuous violation of its injunction because the government loads were not coordinated with a member's order for transportation and because in most instances after the delivery of the government freight the vehicles in question were still 750 to 1,000 miles away from the member they were to serve.' As to the 'sandwich' moves, the court found them to be 'a subterfuge in an attempt to camouflage contemptuous hauling for United States Government. The grain moves which defendants travel great distances to handle produced less than $150 per load-- less than one-half their cost of transportation. There can be no rational economic justification for such conduct except to support prohibited government hauling. This is confirmed by the conduct of defendants in hauling government freight in an easterly direction from the west coast after delivery of the grain.'
 
 
 9
 The third category of freight movement found by the trial court to constitute contempt was the so-called 'east-bound government' movements. Generally, such a movement would begin by a short haul of member products by A.F.L. from Utah to California, or from one point to another in California and then a government load would be moved from California to some distant point in the east. The record shows that most of these so-called eastbound movements were made at a time when there was an urgent need for transportation by American Farm Lines' members. As to these hauls, the trial court concluded that they were done illegally and in direct and willful disobedience to the injunctive order 'because none of defendants' trips in such hauling were necessary to prevent an empty trailer movement.'
 
 
 10
 Appellants do not deny that they made the hauls deemed contemptuous. But in their second point they contend that each move was within the letter of the injunction, i.e., each non-member move was preceded and succeeded by member moves, and only by reading an unstated intent into the proscription can the hauls be deemed contemptuous. They submit that although the trial court may have intended the implications upon which the findings of contempt were founded, the injunctions do not state them with the degree of specificity required by Rule 65(d), F.R.Civ.P., 28 U.S.C. That rule requires all injunctive orders to be specific in terms and to 'describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained * * *.' The only issue, then, is whether the injunctive language provides an adequate basis for proscribing the hauls in question.
 
 
 11
 The permanent injunction of May 28, 1968, provides in pertinent part that appellants are enjoined 'from the for-hire transportation in interstate or foreign commerce of any products other than those products mentioned in Section 1141j of Title 12, U.S. Code, except under one of the following circumstances: (a) when proceeding to pick up and transport a shipment of products contemplated by Section 1141j of Title 12, U.S.Code, when necessary to prevent proceeding with an empty vehicle movement. (b) when returning from the delivery of a shipment of products contemplated by Section 1141j of Title 12, U.S. Code, when necessary to prevent an empty vehicle movement.'
 
 
 12
 A plain reading of this language indicates that the trial court intended to carve out a narrow exception to American Farm Lines' cooperative exemption allowed by 49 U.S.C. 303(b)(5) and 12 U.S.C. 1141j. The manifest intent of the order is that the government hauls must be incidental to the primary statutory activities of the cooperative and necessary to the effective performance of that activity. The injunctive order simply cannot be distorted to allow appellants to transform the government hauls into their primary business by delegating their member hauls to the inferior position of being incidental to the government hauls. Our prior opinion in Munitions Carriers Conference, Inc. v. American Farm Lines, 415 F.2d 747, 749 (10th Cir. 1969), delineated the scope of the injunctive order with precision: 'American Farm Lines and their named employees (were enjoined) from the for-hire transportation in interstate or foreign commerce of any products other than those products mentioned in 12 U.S.C. 1141j except when proceeding outbound to pick up and transport market to farm products or in returning from farm to market delivery with an otherwise empty vehicle.'
 
 
 13
 Regarding the 'long layover' moves, the record provides ample support for the finding that appellants were not proceeding to pick up and transport farm to market products. This is highlighted by the admission that there was no coordination between the government moves and the member hauls. What appellants did was to transport government goods on a timetable satisfactory to the Department of Defense and then wait whatever duration was necessary for such member products to accumulate for eastward movement. In effect, this completely subverts the injunction which requires that before non-member goods are transported, the vehicle must be empty and proceeding to a destination where member goods will be on-loaded. The absence of coordination between member and non-member hauls has caused a breach of that element of the injunction.
 
 
 14
 There is likewise ample evidence in the record to support the finding that the 'sandwich' moves violated the injunction. True, the short member hauls which always intersected two long government moves technically eliminated back to back government hauls. But the government moves made before and after the short member moves cannot be described as incidental to the member hauls. Rather, by skillful manipulation the member moves became incidental to the more profitable government hauls.
 
 
 15
 The 'eastbound government' moves breached the injunction simply because they were not necessary to prevent returning from the West Coast with empty vehicles. The evidence is plain that while appellants made eastbound government hauls, West Coast members were awaiting transportation for their farm products to the Middlewest. In sum, the May 28, 1968, injunction proscribed the acts found contemptuous. It particularized the prohibited acts with adequate detail so as to comply with Rule 65(d) and thereby provided a sound legal basis for the contempt order.
 
 
 16
 The third point raised by appellants concerns damages. Simply stated, their position is that appellees did not tender sufficient proof to show them to be injured by appellants' contumacious acts. This argument is wide of the mark, for the basis for finding that appellees were parties injured by the wrongful acts lies in the original injunction suit. See Munitions Carriers Conference, Inc. v. American Farm Lines, supra. Jurisdiction there was founded on 49 U.S.C. 322(b)(2) which allows only persons injured by the alleged misrepresentations of the Motor Carriers Act to have standing to bring suit to enjoin the unlawful acts.
 
 
 17
 Before an injunction suit can be instituted under 49 U.S.C. 322(b)(2), the claiming parties must make a showing that they are being injured or that if the alleged wrongful acts continue, they will suffer damage. Here, in the injunction suit, the trial court held both as a matter of fact and as a matter of law that if the unlawful acts were to continue, complainants would sustain injury. Appellants subsequent breach of that injunction provides a prima facie case of injury to appellees. And for appellants to now argue that appellees are not the natural recipients of the damage occasioned by the former's acts of contempt is, in effect, an unacceptable collateral attack on the jurisdiction of the trial court in the original injunction suit.
 
 
 18
 The acts of contempt occurred subsequent to the September 3 I.C.C. grant of authority and after Judge Boldt's stay, but prior to the December 19 I.C.C. grant of authority. Although the three-judge court deemed both grants of authority null and void, the Supreme Court reversed only as to the latter grant, noting the I.C.C.'s admission that the earlier grant was defective. Appellants now urge that since the Washington court was overruled, it would be inequitable to allow damages for conduct subsequently vindicated. However, the contemptuous acts were not in fact vindicated, because the Court did not declare the September 3 grant of authority to be valid. Moreover, during the time when the September 3 grant was stayed, appellants knowingly committed acts in direct violation of the instant injunction. Thus, notwithstanding the subsequent disposition of the Washington case, while the present injunctive order was in full force and effect it was willfully breached. Upon these facts, it cannot be said that the trial court's award was either abusive or inequitable.
 
 
 19
 Affirmed.
 
 
 
 [1]
 Munitions Carriers Conference, Inc. v. American Farm Lines, 303 F.Supp. 1078 (W.D.Okl.1969)
 
 
 [2]
 The order granting the permanent injunction was appealed to this court and affirmed in Munitions Carriers Conference, Inc. v. American Farm Lines, 415 F.2d 747 (10th Cir. 1969)