Frederic A. BETHKE, d/b/a Bethke Truck Lines, and Trans-Western Express, Ltd., Plaintiffs,

v.

EDSON EXPRESS, INC., Defendant.

Civ. A. No. 78–K–216.

United States District Court, D. Colorado.

Nov. 13, 1978.

Edward T. Lyons, Jr., Jones, Meiklejohn, Kehl & Lyons, Denver, Colo., for plaintiffs.

Richard P. Kissinger, Denver, Colo., for defendant.

## FINDINGS AND CONCLUSIONS AND ORDER GRANTING PERMANENT INJUNCTION AND FOR ENTRY OF FINAL JUDGMENT

KANE, District Judge.

This is an action to enjoin the defendant from engaging in the business of transporting property for-hire, by motor vehicle, upon the public highways, in interstate commerce, within the State of Colorado, in what is alleged to involve clear and patent violations of the provisions of Sections 203(c) and 206 of the Interstate Commerce Act [49 U.S.C. § 303(c) and 306], and of the rules and regulations of the Interstate Commerce Commission promulgated thereunder.

The cause came on for hearing on July 11, 1978, on the plaintiffs' application for a

preliminary injunction, and after the commencement of the hearing, the court, with the consent of the parties, ordered the trial of the action on the merits to be advanced and consolidated with the hearing of the application. All parties appearing and having offered evidence and having rested their case, and the court having heard and considered all of the evidence and the statements and arguments of counsel, enters the following findings of fact and conclusions of law thereon, and orders that an injunction issue and final judgment in the action be entered as hereinafter set forth.

### Findings of Fact

1. The plaintiffs and defendant are each common carriers by motor vehicle transporting property for-hire, in interstate commerce, on public highways within the State of Colorado, and the complained of violations by the defendant are occurring within this judicial district.

2. Plaintiff Frederic A. Bethke, an individual doing business as Bethke Truck Lines ("Bethke"), operates as a common carrier by motor vehicle, in interstate commerce, under certificates of public convenience and necessity issued by the Interstate Commerce Commission which authorize the transportation of general commodities, with certain usual exceptions, over described regular-routes, between, as is here particularly pertinent, Denver, Colorado, and Fort Collins, Loveland and Greeley, Colorado, with service also being authorized at numerous other points and places on or along his routes in both Larimer and Weld counties of Colorado. Bethke has been engaged in active operations under these certificates for many years and at all times pertinent to this action. Bethke also conducts operations in intrastate commerce, as both a common and contact carrier, generally paralleling his interstate operations, under authorities issued by the Colorado Public Utilities Commission. His headquarters is located at Gilcrest, Colorado, within Weld County, and he also maintains a terminal for use in his transportation business at Denver.

3. The plaintiff Trans-Western Express, Ltd. ("TWX"), is likewise engaged in providing motor vehicle common carrier service, in interstate commerce, under certificates of public convenience and necessity issued by the Interstate Commerce Commission which provide for the transportation of general commodities, with the usual exceptions, over described regular routes, between, among other places, Denver, Colorado, and numerous points or places in Weld and Larimer counties, including Fort Collins, Greeley and Loveland. TWX has also been engaged in operations under its certificates for many years and at all times pertinent to this action. TWX also conducts generally parallel operations in intrastate commerce under certificates issued by the Colorado Public Utilities Commission. The headquarters of TWX is located at Denver. It also operates a distribution terminal near the town of Kelim, through which transportation service to and from points in Larimer and Weld counties is coordinated.

4. The defendant Edson Express, Inc. ("Edson") is engaged in the business of transporting property for-hire, by motor vehicle, in both interstate and intrastate commerce, within the State of Colorado, under various authorities issued by the Interstate Commerce Commission and the Colorado Public Utilities Commission. The headquarters of Edson is located at Longmont, Colorado and it also maintains an office and terminal facility in the Denver area.

5. The interstate common carrier operations of Edson which are the subject of the complaint in this action are being conducted under the claimed authority of Certificate of Registration MC–35227 Sub 6 issued by the Interstate Commerce Commission which provides, in essence, for the transportation of general commodities, "on call and demand," between points in the Colorado counties of Adams, Arapahoe, Denver and Jefferson, and which also provides for "occasional service" outside of the four named

base counties throughout the rest of the state. This certificate of registration is subject to various restrictions including a provision which prohibits the holder or operator of the authority "to establish a branch office or to have an agent employed at any other city or town than the City of Englewood, Colo., and the City and County of Denver, Colo., for the purpose of developing business."

6. The complaint in this action alleges that Edson is engaged in operations in violation of the terms and conditions or restrictions contained in the aforementioned certificate of registration, and that it is therefore operating in clear and patent violation of Sections 203(c) and 206 of the Interstate Commerce Act (which prohibit unauthorized motor carrier operations in interstate commerce), (1) by providing *regular* rather than *occasional* for-hire transportation service, in interstate commerce, between Denver, on the one hand, and, on the other, Greeley, Fort Collins and Loveland, Colorado, together with other points in Larimer and Weld counties, Colorado (2) by conducting such operations *on schedule* rather than *on call and demand*; and (3) by utilizing an office or agent located outside the Cities of Englewood and Denver for the purpose of developing business in connection with such operations.

7. A copy of the complaint in this action and of the plaintiffs' application for a preliminary injunction were served upon the Interstate Commerce Commission as is required by the provisions of 49 U.S.C. § 322(b)(2). The Interstate Commerce Commission has neither sought to intervene in the action as it would be entitled to do under Section 322(b)(2), nor has it notified this court as it could have done under 49 U.S.C. § 322(b)(3) that it intends to consider the matter now before this court in a proceeding before the commission.

8. Edson's Sub 6 certificate of registration referred to in finding 5 above was issued under the provisions of Section 206(a)(7) of the Interstate Commerce Act [49 U.S.C. § 306(a)(7)] as amended by public law 87–805, enacted October 15, 1962. This statute provides, in substance, for the issuance of a certificate of registration authorizing the holder to conduct interstate motor common carrier operations within a single state corresponding in scope to operations authorized within that state in intrastate commerce under an appropriate certificate of public convenience and necessity issued by the state regulatory agency. The statute expressly provides:

> "Such certificate of registration shall not exceed in scope the services authorized by the State certificate to be conducted in intrastate commerce, and shall be subject to the same terms, conditions, and limitations as are contained in or attached to the State certificate except to the extent that such terms, conditions, or limitations are inconsistent with the requirements established by or under this Act."

9. In interpreting the scope of the service authorized under a certificate of registration and the meaning of restrictions applicable thereto, the Interstate Commerce Commission has consistently ruled that such operating authorities are to be construed in accordance with the interpretation or construction placed upon the underlying State certificate by the issuing State agency. *See, e. g., Orsheln Bros. Truck Lines, Inc. v. Knaus Truck Lines, Inc.*, 108 M.C.C. 301, 304 (1969). This approach is clearly in accord with the evident intention of Congress in enacting Section 206(a)(7), as amended. Accordingly, for present purposes, the scope of operations authorized under Edson's certificate of registration and the restrictions applicable thereto will be interpreted in accordance with the constructions placed upon the corresponding state operating authority by the Colorado Public Utilities Commission and by the Colorado Supreme Court in reviewing the decisions of that agency.

10. The same "occasional service" operating authority contained in the State certificate upon which the Sub 6 certificate of registration held by Edson is predicated has been previously construed and interpreted by the Colorado Public Utilities Commission

in *Re Motor Vehicle Operations of Englewood Transit Company*, PUC Dec. No. 62637 (1964). In that decision the Colorado Public Utilities Commission defined the term "occasional" as used in this certificate as: "Recurring now and then; casual, incidental; also infrequent." The Public Utilities Commission also ruled that an act of transportation *service* within the portion of the certificate providing for "occasional service" occurred each time that the holder of the authority transported a shipment from a point in the City and County of Denver or in the counties of Adams, Arapahoe and Jefferson to a point in the State of Colorado outside of those counties. The commission in that case held that the transportation of 385 truckload shipments during a 60-day period, from Denver to points of destination in the area of Colorado Springs, Colorado, exceeded the scope of "occasional service," and the holder of the authority was ordered to cease and desist from violations of the authority in the future. This decision and order was affirmed by the Colorado Supreme Court in *Englewood Transit Company v. PUC*, 167 Colo. 54, 445 P.2d 218 (1968), in which the court stated, *inter alia* :

> "There is nothing obscure or mysterious about the word 'occasional' as used in the certificate of authority . . . Webster's Unabridged New International Dictionary defines 'occasional' as 'occurring at irregular intervals; infrequent.' Webster's Intercollegiate Dictionary defines the word as 'occurring now and then; incidental.' . . . the term 'regular' in its ordinary and popular meaning is the clear antonym of 'casual' or 'occasional'."

11. Subsequently, this same "occasional service" operating authority as it appears in the certificate of registration under which the complained of operations by Edson in the present case are taking place was construed in a decision by the Interstate Commerce Commission in *Overland Motor Express, Inc. v. Englewood Transit Company*, No. MC–C–7924 (1974). In its decision in that case the Interstate Commerce Commission adopted, verbatim, the definition of the term "occasional" contained in the opinion by the Colorado Supreme Court in *Englewood Transit Company v. PUC, supra*, quoted in finding number 10 above. In its decision in *Overland Motor Express*, the ICC held that the defendant in that case was violating the "occasional service" authority in question by providing daily service, in interstate commerce, on a regular and repetitive basis, transporting general commodity freight, consisting primarily of numerous less-than-truckload shipments, from Denver, to various points in the State of Colorado including Colorado Springs, Pueblo, La Junta, Lamar, Rocky Ford, Las Animas, Fowler and Ordway. The interstate traffic in question in that case was received by the defendant carrier from connecting interline carriers at Denver. The defendant there was normally operating in excess of two line-haul vehicles per day for the movement of the traffic from Denver to the destinations which were being served. During a particular five-day working week, the defendant in that case transported a total of 556 shipments in interstate commerce, weighing in the aggregate 438,159 pounds, between Denver and the points which it was serving under the "occasional service" authorization. Based upon a determination that the operations in question violated the "occasional service" operating authority, the ICC entered an order requiring the defendant in that case to cease and desist from all operations, in interstate commerce, of the character which had been found to be unlawful. Edson was one of the complainants in that case.

12. Subsequent to the decision by the ICC in *Overland Motor Express*, Edson purchased the same certificate of registration which was the subject of the complaint in that proceeding in a transaction which was approved by the ICC in *Edson Express, Inc.—Purchase—Golden Industrial Services, Inc.*, No. MC–F–12501, by an order which became administratively final on October 4, 1977. The testimony of the Chief of Transportation of the Colorado Public Utilities Commission, who testified as an expert witness during the trial in the present action,

established that the certificate of registration which Edson acquired in the proceeding approved by the ICC in Docket No. MC–F–12501 authorizes only the same service, subject to the same limitations and restrictions, as was provided for under this certificate of registration when it was construed by the ICC in its 1974 decision in *Overland Motor Express, Inc. v. Englewood Transit Company, supra,* despite minor changes in the verbiage now employed to describe the operating authority.

13. In conducting operations under the certificate of registration in question, Edson provides daily service, five days a week, Monday through Friday, for the transportation of interstate freight, consisting primarily of less-than-truckload shipments of general commodities, from and to the Denver area, to and from numerous points in Weld and Larimer counties, Colorado, including Fort Collins, Loveland and Greeley. Most of this traffic is received from connecting interline carriers in the Denver area. Inbound interstate shipments which Edson receives from the connecting carriers are normally transported initially to Edson's terminal at Longmont, in Boulder County, at which point the freight is sorted and reloaded into vehicles for delivery at Fort Collins, Loveland and Greeley, and other points in Larimer and Weld counties. Edson also originates interstate shipments at the various points which it is serving in Larimer and Weld counties, which are transported to Denver, either directly or via Edson's terminal at Longmont where the shipments are sorted and reloaded, and at Denver the traffic is then interlined with interstate connecting carriers for transportation beyond the State of Colorado. Edson is interlining interstate traffic with several connecting carriers in the Denver area. Its vehicles make regular, daily check-stops at the facilities of some of the interline carriers to pick up interstate shipments. Regular check-stops to pick up freight are also made at the facilities of some of the shippers which are being served in Weld and Larimer counties.

14. The interstate shipments which Edson receives from the connecting carriers in the Denver area for delivery in Weld and Larimer counties are physically transported to Edson's Longmont terminal, commingled with intrastate shipments, in vehicles which are operated on schedule in accordance with time schedules filed by Edson with the Colorado Public Utilities Commission. Edson normally operates 15 to 20 schedules per day from Denver to Longmont, two or three of which schedules ordinarily include the interstate shipments destined to points in Larimer and Weld counties. After the interstate traffic is unloaded and sorted at Edson's Longmont terminal, it is reloaded, along with intrastate freight, in vehicles which also operate on daily schedules, usually twice a day, in accordance with Edson's time schedules on file with the Public Utilities Commission, to various points in Larimer and Weld counties, including Loveland and Greeley. Edson's service at Fort Collins is not performed under the time schedules which it files with the Public Utilities Commission, but interstate traffic destined to that point is handled through Edson's terminal at Longmont in basically the same fashion as the traffic which moves to Loveland and Greeley, being initially transported from Denver to Longmont in vehicles operating on schedule, and thence daily to Fort Collins. Interstate shipments originating at points in Larimer and Weld counties are transported by Edson to Denver, again commingled with intrastate shipments, either directly or through Edson's Longmont terminal, in vehicles which operate, wholly or in part, under Edson's time schedules on file with the Colorado Public Utilities Commission.

15. During the 13-week period of January 1, 1978 through March 31, 1978, Edson transported a total of 1,633 shipments aggregating 1,322,293 pounds, in interstate commerce, between Denver, on the one hand, and, on the other, Fort Collins, Greeley, Loveland and other points in Larimer and Weld counties, under the claimed authority of its Sub 6 certificate of registration, from which Edson derived revenues of approximately $29,000. During this 13-week period the number of interstate ship-

ments transported by Edson increased from a total of 44 during the first week of January 1978, to as many as 207 shipments during the second week of March, with an average of 186 shipments per week being transported during the last four weeks of the period. Edson derived revenues of approximately $29,000 from the transportation of this interstate traffic during the 13-week period. The number of interstate shipments being transported by Edson between Denver, and Fort Collins, Loveland, and other points in Weld and Larimer counties, thereafter increased, with a total of 260 shipments being transported during the five-day working week beginning June 19, 1978. The revenue derived by Edson from the 260 shipments transported during the latter week was approximately $4,940. The revenues which Edson is deriving from the transportation in question are a significant economic factor in its overall transportation activities. Since the transportation of such interstate traffic has increased in volume since the beginning of 1978, its economic significance in terms of Edson's total operation is also increasing proportionately.

■ 16. The operations in which Edson is engaging in interstate commerce under its Sub 6 certificate of registration, between Denver, and points and places in Larimer and Weld counties, are being conducted in excess of, and in violation of, the "occasional service" limitation contained in this operating authority. The operations in which Edson is engaged under this authority do not conform to the definition of "occasional service" which has been announced by the Colorado Public Utilities Commission and the Colorado Supreme Court, and which has been adopted by the Interstate Commerce Commission as applicable to this authority. Edson is violating its "occasional service" authority by providing frequent, regular, and repetitive service thereunder, in interstate commerce. The provision of the service in question has become an integral part of Edson's everyday operation. In accordance with the well-established decisional guidelines which have been held to govern the interpretation of Edson's "occasional service" operating authority, it fol-

lows that Edson is operating in clear and patent violation of its certificate of registration, and therefore in clear and patent violation of the provisions of Sections 203(c) and 206 of the Interstate Commerce Act.

■ 17. Edson is also operating in clear and patent violation of the limitation in its certificate of registration which provides for service on "call and demand," and which by necessary implication precludes operating on schedule. The distinction between scheduled and call-and-demand service, as these terms are used in operating authorities issued by the Colorado Public Utilities Commission, was clearly set forth in *Eveready Freight Service v. PUC*, 167 Colo. 577, 449 P.2d 642 (1969). The definition of scheduled service set forth in that case was found to be applicable to the certificate of registration under which Edson is operating by the Interstate Commerce Commission in *Overland Motor Express, Inc. v. Englewood Transit Company, supra*. Edson is admittedly transporting interstate freight under this certificate of registration in vehicles which are operated in accordance with time schedules on file with the Colorado Public Utilities Commission. The transportation of interstate shipments under this certificate of registration has become an integral part of Edson's scheduled operation.

■ 18. Everett Krieger is a freight solicitor employed at Edson's Longmont terminal, in Boulder County. His job is to develop business for Edson. Mr. Krieger was hired in November 1977, shortly after the ICC gave final approval to Edson's acquisition of the certificate of registration in question. Prior to his employment by Edson, Mr. Krieger was employed by TWX as a dispatcher, in which capacity he had become familiar with TWX's customers. Mr. Krieger is regularly engaged in soliciting both interstate and intrastate freight for Edson at points in Larimer and Weld counties, and has succeeded in developing some interstate business for Edson from customers who were previously using TWX and Bethke. In addition, Edson maintains toll-free telephone service between its Long-

mont terminal, and Fort Collins, Greeley and Loveland, by means of which customers in the latter three cities contact Edson's Longmont terminal for service. Most of the interstate traffic which Edson had developed under the authority in question is distributed through the Longmont terminal. Edson's use of an office in Longmont, and the employment by Edson of an agent at that location, for the purpose of developing the interstate business in question, is a clear and patent violation of the restriction contained in Edson's certificate of registration quoted in finding 5 above. The applicability of such a restriction to operations in interstate commerce was confirmed in a decision by the ICC in *Englewood Transit Company—Petition for Declaratory Order*, No. MC–121495 Sub 6 (1977).

■ 19. The complained of interstate transportation operation by Edson is competitive, in whole or in part, with the authorized common carrier services in which Bethke and TWX are engaged under their respective certificates of public convenience and necessity. The interstate traffic which Edson is transporting has been diverted, at least in part, from these plaintiffs. There is no question that both TWX and Bethke have been injured substantially by Edson's illegal diversion of transportation business which the plaintiffs would otherwise have shared. As a result of Edson's illegal transportation activities the plaintiffs have lost profits that would otherwise have accrued to them had not Edson diverted substantial hauling business. The plaintiffs have no plain, speedy or adequate remedy at law. They are "injured" parties under 49 U.S.C. § 322(b)(2).

■ 20. The plaintiffs are the prevailing parties in this action and are entitled, in the discretion of the court, to recover reasonable attorneys' fees under the provisions of 49 U.S.C. § 322(b)(2), in addition to costs allowable under the Federal Rules of Civil Procedure. The attorney fees incurred by the plaintiffs in this action, in the amount of $8,434, were reasonably and necessarily incurred and are reasonable in amount, and recovery of such fees by the plaintiffs will be included in the order for judgment which follows.

## Conclusions of Law

1. This court has jurisdiction of the parties and this action under 49 U.S.C. § 322(b)(2).

■ 2. The purpose for which 49 U.S.C. § 322(b)(2) was enacted was to afford injured parties a measure of self-protection against operations which are openly and obviously unlawful, and which are being conducted in clear and patent violation of the provisions, as are here pertinent, of Sections 203(c) and 206 of the Interstate Commerce Act. *Baggett Transportation Company v. Hughes Transportation, Inc.*, 393 F.2d 710 (8th Cir. 1968), *Munitions Carriers Conference, Inc. v. American Farm Lines*, 415 F.2d 747 (10th Cir. 1969). The "clear and patent" test is basically a jurisdictional standard rather than a statement of the plaintiffs' burden of proof, however, the evidence in the present case clearly satisfies this standard. No question calling for deference to the primary jurisdiction of the Interstate Commerce Commission is presented. All of the violations which have been found to exist readily and obviously appear from an application of the controlling decisional guidelines which have been held to apply to the interpretation of the defendant's operating rights by the tribunals having primary jurisdiction in the matter. There is no question that by operating in excess of the operating authority which it holds and by violating the restrictions contained therein the defendant is operating in clear and patent violation of the pertinent sections of the Interstate Commerce Act.

3. The plaintiffs, having shown injury to themselves resulting from such violation, are entitled under 49 U.S.C. § 322(b)(2) to an injunction restraining further violation of such sections by the defendant.

4. Defendant should be permanently enjoined and restrained from engaging in further operations in the business of transporting property for-hire, by motor vehicle,

upon the public highways, in interstate commerce, within the State of Colorado, in the manner which has been found herein to be unlawful.

5. Since this action has with the consent of the parties been tried on the merits and a permanent injunction is hereby issued, the provisions of 49 U.S.C. § 322(b)(2) which call for the giving of security in instances where a temporary restraining order, temporary injunction, or other similar process is issued, do not apply.

It is ordered that the following permanent injunction and final judgment in the action be entered in accordance with the findings and conclusions herein.

## PERMANENT INJUNCTION AND ORDER FOR ENTRY OF FINAL JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant Edson Express, Inc., its officers, agents, servants, employees, attorneys in fact, and all persons in active concert or participation with them, be, and they are hereby, permanently enjoined and restrained from, in any manner whatsoever;

1. Transporting property for-hire, by motor vehicle, upon the public highways, in interstate commerce, within the State of Colorado, under Certificate of Registration MC–35227 Sub 6, on a frequent, regular or repetitive basis, between, to, or from, any point or points in the State of Colorado located outside of the City and County of Denver, or the counties of Adams, Arapahoe and Jefferson; and Edson Express, Inc., and its successors or assigns shall henceforth, at all times, confine and limit operations in interstate commerce under said Certificate of Registration beyond the City and County of Denver, or the counties of Adams, Arapahoe and Jefferson, to the provision of occasional service only. Only for the purposes of this paragraph 1 *frequent* means occurring more than on one day in any week of any month of any year; *regular* means occurring in more than one week in any month of any year; *repetitive* means occurring in any two consecutive months of any year and *occasional* means not more than once in any twenty day period.

2. Operating on schedule, or transporting shipments in vehicles being operated on schedule, in the transportation of property for-hire, by motor vehicle, upon the public highways, in interstate commerce, within the State of Colorado, under Certificate of Registration MC–35227 Sub 6, between, to, or from, any point or points in the State of Colorado located outside of the City and County of Denver, or the counties of Adams, Arapahoe and Jefferson; and Edson Express, Inc., and its successors or assigns shall henceforth, at all times, confine operations in interstate commerce under said Certificate of Registration beyond the City and County of Denver, or the counties of Adams, Arapahoe and Jefferson, to the provision of call and demand service only, provided in vehicles operated on call and demand and not on schedule;

3. Establishing or maintaining an office or having an agent employed at Longmont, Colorado, or at any other city or town than the City of Englewood, Colorado, or the City and County of Denver, for the purpose of developing business, in interstate commerce, under Certificate of Registration MC–35227 Sub 6;

unless and until there is in force and effect with respect to Edson Express, Inc., or any successor in interest, appropriate operating authority issued by the Interstate Commerce Commission which effectively supersedes Certificate of Registration MC–35227 Sub 6 and authorizes any of the operations, acts or activities prohibited herein.

IT IS FURTHER ORDERED that the Clerk of the Court shall forthwith enter final judgment in this action incorporating the provisions of the foregoing permanent injunction, and providing for the recovery by plaintiffs from the defendant of attorney fees in the sum of $8,434, in addition to costs allowable under the Federal Rules of Civil Procedure.