## No. 27059

**Denver Cleanup Service, Inc., a Colorado corporation v. Public Utilities Commission of the State of Colorado; Howard S. Bjelland, Edwin R. Lundborg, and Henry E. Zarlengo, Commissioners; Commerce Refuse Disposal Company, Inc., a Colorado corporation, and Bestway Disposal Company, a Colorado General Partnership**

(561 P.2d 1252)

Decided March 7, 1977.                    Rehearing denied April 18, 1977.

Holland & Hart, Jeffrey C. Pond, for petitioner-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, John E. Archibold, Special Assistant, for The Public Utilities Commission of the State of Colorado and Howard S. Bjelland, Edwin R. Lundborg and Henry E. Zarlengo, Commissioners.

John J. Conway, for amicus curiae, The Contract Carriers' Conference.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Denver Cleanup Service, Inc., herein called the petitioner, applied to the Public Utilities Commission for an extension of its contract carrier's permit in order to provide contract carrier service for the transportation of ashes, trash and other refuse to four companies. The Commission followed the recommendation of its hearing examiner, granting the extension of service to one customer and denying it as to the other three. On appeal by the petitioner, the district court affirmed the Commission's action. We reverse.

There were several protestants before the Commission. Two of these, both certificated common carriers, appeared in the district court and here.

In making his recommended decision, the hearing examiner relied upon an administrative decision which did not become the subject of judicial review. *In re Curnow Transportation Company*, PUC Decision No. 76151 (1970). From *Curnow*, the hearing officer in this case stated four criteria which he regarded as necessary elements of proof. We refer to these as guidelines and paraphrase and quote them as follows:

1. "Applicant must establish that the transportation to be performed is within the definition of 'contract carrier by motor vehicle', C.R.S. 1963, 115-11-1(h). This is proved in the following manner: There is a presumption that the proposed service constitutes common carriage, and the method of overcoming this presumption, as stated in *Curnow*, is to establish that the proposed service is so specialized and tailored to the particular shipper that it is beyond the capability of existing common carriers.

2. "Applicant must establish the existence of a present or future private or personal need for the proposed service.

3. "Applicant must establish either (1) inadequacy of the common carriers to handle the proposed service, or (2) that the proposed operation of the contract carrier will not impair the service of common carriers serving the same area.

4. "Applicant must establish that it is fit and able to perform the proposed service."[1]

We have concluded that the test set forth in guideline 1 is invalid. Before we reach our discussion of this invalidity, we make the following prefatory comments.

█ *Curnow, supra*, correctly set forth that one may look in vain in the statutes or in the rulings of the Commisison and of this court for a clear definition of contract carriage or for an articulation of specific guidelines to be followed in the issuance of a contract carrier permit. Our statutes provide for authorization of (1) common carriers and (2) contract carriers. They state that a common carrier is one which must indiscriminately accept and carry passengers or property between fixed

---

[1] The Commission derived guideline 1 from its view that one of the purposes of the contract carrier act is to protect common carriers from encroachment by contract carriers. *See Public Utilities Commission v. Stanton Transportation Company*, 153 Colo. 372, 386 P.2d 590 (1963). Guideline 2 is also derived from the Commission's reasoning that the purpose of the contract carrier act is to protect common carriers, and from *Ward Transport v. PUC*, 151 Colo. 76, 376 P.2d 166 (1962), which affirmed a PUC decision issuing a private carrier's permit partially based upon a finding that there was a "present or future private or personal need for the proposed service."

Guideline 3 is derived from the provisions of Section 40-11-103(2), C.R.S. 1973.

Guideline 4 has been used over the years by the Commission as an ultimate finding in both common and contract carrier orders. This criterion received tacit judicial approval in *Ward Transport, supra*.

points or over established routes. The principal statutory distinction between the two is that a contract carrier is one which is not a common carrier. See section 40-1-102(3), 40-10-101(4), 40-11-101(3) and 40-11-101(9)(a) and (b), C.R.S. 1973.

In *Miller Bros. v. PUC*, 185 Colo. 414 at 435, 525 P.2d 443 (1974), we stated:

"We are tempted to announce a set of guidelines, extracted from the statutes and decisions of other jurisdictions. This, however, lies solely within the province of the Commission. To repeat, the Commission is here acting in a legislative capacity. It needs to apply guidelines, and it is within our jurisdiction on appeal to see that it does. Also, it is within our authority to declare standards and criteria as unconstitutional and arbitrary, capricious, unreasonable or vague."

■ Admittedly, one of the fundamental distinctions between a contract carrier and a common carrier is that a contract carrier has an obligation only to his contract-customers and has no obligation to others desiring carriage. In contrast, the common carrier must convey for all desiring its transportation. *Ward Transport v. P.U.C.*, 151 Colo. 76, 376 P.2d 166 (1962). The petitioner would have us hold that, so long as it follows this rule, it is entitled to a permit. This argument we do not accept. If further guidelines were not established, the applicant would need only to present evidence that there was a customer or customers desiring service. This would be fatal to the continued economic viability of common carriers, and contrary to the obvious legislative purpose that there be both contract carriers and common carriers.

In guideline 1, the Commission has approached the opposite extreme by requiring that, to be considered a contract carrier, the proposed service must be beyond the capabilities of an authorized common carrier. In effect, this "specialization" standard of guideline 1 grants a monopoly to common carriers, eliminating the need for contract carriage except under too limited circumstances.[2]

■ Until Senate Bill 208 was adopted by Colo. Sess. Laws 1967, ch. 433, at 974, this state had a policy of "regulated monopoly" as to common carriers, established by pronouncements of the Commission and this court. This enactment, now in section 40-10-105, C.R.S. 1973, changed the policy of this state from one of regulated monopoly to "regulated competition." For discussion of the subject, see *Miller, supra*, and *Red Ball Motor Freight v. PUC*, 185 Colo. 438, 525 P.2d 439 (1974). Prior to S.B.

---

[2] The "specialization doctrine" presents itself under a variety of tests and has had a complicated case history. It was first enunciated in *Pregler Extension of Operations*, 23 M.C.C. 691 (1940), and received approval in *Doyle Transfer Company v. U.S.*, 45 F. Supp. 691 (D.D.C. 1942). A discussion of the history of this test is found in *Contract Steel Carriers v. U.S.*, 128 F. Supp. 25 (N.D. Ind. 1955).

208, in many decisions of the Commission and of this court involving protests by common carriers of private carrier authority, there was intertwined the doctrine of regulated monopoly. An example is *PUC v. Stanton Co.*, 153 Colo. 372, 386 P.2d 590 (1963). Here, the Commission is going even further than *Stanton* to protect the common carrier monopoly, whereas under the legislative policy of regulated competition our courts and the Commission should proceed somewhat in the other direction.

From the foregoing, if guideline 1 is contrary to legislative intent, it is apparent that the solution to the problem here presented lies between the extremes indicated on the one side by the petitioner and on the other by the Commission in guideline 1.

■ The Colorado and federal constitutions condition the exercise of governmental regulation for public health, safety and welfare by requiring that the intended goals shall be achieved through methods consistent with due process of law. *See Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469 (1934); and *Swisher v. Brown*, 157 Colo. 378, 402 P.2d 621 (1965). The General Assembly established several types of motor vehicle transportation, including common and contract carriage. By doing so, without question it intended to protect the public health, safety, and general welfare by providing a framework for the better transportation of persons and property.

■ The test used by the Commission, however, discriminates unreasonably in favor of common carriers to the unnecessary detriment of contract carriers. The guidelines used by the Commission promote too strongly the demise of contract carriers. Since the legislative purpose negates a result that either class be obliterated by the Commission's fiat, it follows that the Commission's test violates legislative intent and purpose.

Inasmuch as we declare the Commission's test invalid, and as there is such a dearth of legislative and judicial particularity concerning guidelines, we have concluded to indicate some guidelines which may be considered by the Commission.[3]

We are favorably impressed by the federal rule which gives as a guideline that a shipper is entitled to have its distinct needs met and that a contract carrier may design its services to meet those distinct needs. 49 U.S.C. § 303(a)(15) and *I.C.C. v. J. T. Transport Co.*, 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961). This suggests to us, and we in turn suggest to the Commission, that the portion of the test of a contract carrier as here involved is whether its service to a particular potential customer is *distinctly different or superior* to that of authorized common carriers.

---

[3] We realize this is contra to our intention to remain silent as expressed two and one-half years ago in *Miller, supra.*

There is no issue as to guideline 4 regarding fitness and ability. Guidelines 2 and 3 are intertwined with guideline 1. In the light of our disposition of and comments concerning the latter, the Commission should reconsider the first three guidelines.

We reverse the judgment of the district court and direct it to remand the cause to the Commission for reconsideration consonant with the views herein expressed.

MR. JUSTICE KELLEY does not participate.