## No. 28170

### Northwest Transport Service, Inc. v.
### The Public Utilities Commission of the State of Colorado

(593 P.2d 1366)

Decided April 30, 1979.

Jones, Meiklejohn, Kehl & Lyons, Leslie R. Kehl, Nancy P. Bigbee, for petitioner-appellant.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, John E. Archibold, Special Assistant, for respondent-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Northwest Transport Service, Inc. (hereinafter, Northwest) appeals from the district court's decision affirming two Public Utility Commission (PUC) orders. PUC Decision No. 90565 denied Northwest's petition for clarification or modification of a 1967 decision, and PUC Decision No. 91439 cancelled Permit No. B-503 as being duplicative of Certificate No. 3171. We affirm.

Northwest succeeded to all the operating rights of Goldstein Transportation and Storage, Inc. (Goldstein).

In October, 1967 the PUC issued Decision No. 70221 ordering that, within seven years, Goldstein (or its successors in interest) request cancellation of all "duplicating" authority held by it or any carriers with whom it was affiliated. Goldstein then held Certificate No. 3171 and Permit No. B-503, as well as six other permits and certificates, *viz.,* PUC No. 416 and 416-I, PUC No. 1901-I, PUC No. 3537, PUC No. 3538, PUC No. 3539, and Permit No. A-787. During the next seven years, the PUC authorized transfers of PUC Nos. 416, 416-I, 3537, 3538 and 3539. Permit No. A-787 was cancelled. Permit No. B-503 and Certificate No. 3171 constitute the focus of this appeal.

Permit No. B-503 reads as follows:

"Authorization as a contract carrier, by motor vehicle, not over substantially regular or established routes, or between fixed termini or to a fixed terminus or termini, all operations to be suspended to the extent that they duplicate authority under P.U.C. No. 416, as to both territory and commodities. Dec. #63607; suspends all operations under Permit No. B-503 to the extent that they duplicate the authority under P.U.C. No. 3171 as to both territory and commodities."

Certificate No. 3171 provides:

"Authorization as a common carrier, by motor vehicle, in the conduct of a transfer, moving, and general cartage business, from point to point in the State of Colorado, subject to the following conditions:

"(a) for the transportation of commodities other than household goods between points served singly or in combination by scheduled carriers, applicant shall charge rates which in all cases shall be at least 20 per cent in excess of those charged by the scheduled carriers; (b) applicant shall not operate on schedule between any points; (c) applicant shall not be permitted, without further authority from the Commission to establish a branch office or to have an agent employed in any other town or city than Denver for the purpose of developing business. Dec. #63607: suspends all

operations under Permit No. B-503 to the extent that they duplicate the authority under P.U.C. No. 3171 as to both territory and commodities."

In 1977, Northwest requested authorization to transfer Permit No. B-503 to an unrelated entity. The PUC did not evaluate the request, but directed Northwest to show cause why an order should not be entered cancelling Permit No. B-503 duplicating authority (Case No. 5724). In response, Northwest petitioned for clarification or modification of the 1967 Decision No. 70221. The PUC denied that petition and ruled in Decision No. 90565 that Permit No. B-503 duplicated Certificate No. 3171.

The PUC's show cause proceeding resulted in Decision No. 91439 which ordered that Permit B-503 be cancelled as duplicative of Certificate No. 3171.

After appropriate administrative appeals, judicial review was sought of Decision Nos. 90565 and 91439. The matters were consolidated on appeal and in both instances, the district court affirmed the PUC. Northwest has appealed.

I.

The first issue on appeal is whether Permit No. B-503 and Certificate No. 3171 conferred duplicating operating authority within the meaning of the PUC's 1967 Decision No. 70221. That decision read:

"Therefore, the ordering provision of this Decision to follow will provide for the cancellation of the duplicating authority as contained in the Goldstein Certificates and Permits, as well as that held by Goldstein which duplicates the authority held by Westway and North Eastern, inasmuch as all of these carrier entities will be under common control at the consummation of the transaction as contemplated herein. Said cancellation, however, shall be withheld for a period of seven years from the effective date of this Decision . . . . Transport [Northwest] shall, however, within said seven year period file with the Commission . . . a request for cancellation of duplicating operating authority setting forth exactly what authority is to be cancelled and the manner in which the authority will read after cancellation. The Commission may then satisfy itself concerning the cancellation and will issue a supplemental order hereto setting forth the exact authority after cancellation. Should Transport, or its successor in interest, fail to submit such a request during the seven year period, the Commission on its own motion, without necessity of further hearing unless the Commission desires, may enter a supplemental order in conjunction with these proceedings providing for the cancellation of all duplicating operating authority."

Northwest argues that the permit and certificate in question could not confer duplicating operating authority since contract carriage and common carriage are mutually exclusive by statutory definition. Sec-

tions 40-11-101(3) and 40-10-101(4)(a), C.R.S. 1973.[1] We conclude, however, that the statutory definitions merely indicate that permits and certificates confer different types of authorization. One difference, noted by Northwest, is that Certificate No. 3171's authorization is restricted as to rates, scheduling and the use of branch offices or agents. The definitions do not resolve the question whether duplicating *operating* authority within the meaning of Decision No. 70221 may nonetheless exist under the different authorizations.

■ More pertinent are the unrestricted natures of the certificate and permit. Each authorizes carriage to and from any points in Colorado. Moreover, the certificate specifically states that all operations under the permit were suspended "to the extent that they duplicate the authority under PUC No. 3171 as to both territory and commodities." Neither authorization is limited as to territory, as noted above. Both authorizations are entirely general.[2] In light of Northwest's ability to transport essentially the same commodities to the same places, albeit under slightly different terms, the PUC's finding in Decision No. 91439 that the permit and certificate confer duplicating operating authority is justified. *BDC Corporation v. Public Utilities Commission,* 167 Colo. 472, 448 P.2d 615 (1968). We have already dismissed as unmeritorious Northwest's only argument to the contrary, *viz.,* that by definition the authorities are mutually exclusive. As to the conclusion that the record supports a finding that the authorizations are duplicative, we affirm.[3]

---

[1] "'Contract carrier by motor vehicle' means every corporation, person, firm, association of persons, lessee, trustee, or any receiver or trustee appointed by any court, *other than motor vehicle carriers as defined by section 40-10-101(4),* owning, controlling, operating, or managing any motor vehicle in the business of transporting persons or property of others . . . ." (Emphasis added.) Section 40-11-101(3), C.R.S. 1973.

"'Motor vehicle carrier' means every person, lessee, trustee, receiver, or trustee appointed by any court whatsoever owning, controlling, operating, or managing any motor vehicle used in serving the public in business of the transportation of persons or property for compensation as a common carrier over any public highway between fixed points or over established routes, or otherwise, whether such business or transportation is engaged in or transacted by contract, or otherwise . . . ." Section 40-10-101(4)(a), C.R.S. 1973.

[2] The certificate does not provide for the carriage of household goods. We do not regard this as a material difference.

[3] We note that should the controversy have arisen after June 7, 1969, we might resolve the issue by reference to the statute adopted on that date:

"A motor vehicle carrier which owns, operates, or exercises operating rights, whether interstate or intrastate, or both, under a certificate as a common carrier, and which also owns, operates, or exercises operating rights under a permit as a contract carrier by motor vehicle shall have the right to utilize the same equipment for transporting property at the same time under the authorities granted by both the certificate and the permit, but whenever the permit and certificate authorize duplicating transportation rights, the carrier shall perform such transportation under the authority granted by the certificate." Section 40-10-119, C.R.S. 1973.

Since the statute requires an election to operate as a common carrier, it precluded duplicating *operations* even when a contract carrier permit and a common carrier certificate by their terms confer duplicating transportation rights. The statute, however, would not preclude the PUC from requiring a carrier to relinquish a permit or certificate *as a condition* of granting another permit or certificate which confers duplicating transportation authorization.

## II.

The second issue for review is whether the PUC lacked jurisdiction to issue its order in the show cause proceeding due to its failure to comply with section 40-11-110, C.R.S. 1973. The statute reads:

"The commission . . . after hearing upon notice to the holder of any permit or any registration by a contract carrier by motor vehicle having registered under the provisions of section 40-11-115, issued under this article, and when it has been established to the satisfaction of the commission that such holder has violated any of the provisions of this article or any of the terms and conditions of his permit or registration, or has exceeded the authority granted by such permit or registration, or has violated or refused to observe any of the proper orders, rules, or regulations of the commission, may revoke, suspend, alter, or amend any permit or registration issued under this article; and the holder of such permit or registration shall have all of the rights of hearing, review, and appeal as to such order or ruling of the commission as are now provided by articles 1 to 7 of this title."

The PUC claims that, since Northwest failed to request cancellation of duplicating authority, it was empowered by the 1967 Decision to cancel the permit without a hearing. In the alternative, the PUC argues that the show cause proceeding provided a sufficient hearing to satisfy due process requirements.

In the show cause proceeding, Northwest was afforded an opportunity to present evidence and argue regarding the cancellation of Permit No. B-503. Specifically, Northwest argued that the transfers and cancellations from 1967 through 1973 had eliminated all duplicating authorizations and established its compliance with Decision No. 70221. Northwest thus had a hearing on the issues and has been afforded all rights of review and appeal established by statute.

Therefore, we conclude that the PUC did comply with the statutory requirement of a hearing through the show cause proceeding. The PUC contends that by virtue of Decision No. 70221, the cancellation could have been effected without any hearing at all. In view of our conclusion that the show cause proceeding afforded a sufficient hearing, we need not consider that contention.

We affirm.

MR. JUSTICE PRINGLE concurs in the result.

MR. JUSTICE CARRIGAN does not participate.