**J.C. TRUCKING, INC.,**
**Petitioner–Appellant,**

**v.**

**The PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO,**
**Respondent–Appellee.**

**No. 87SA374.**

Supreme Court of Colorado,
En Banc.

July 3, 1989.

John J. Conway, Denver, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Mark W. Gerganoff, Asst. Atty. Gen., Denver, for respondent-appellee.

KIRSHBAUM, Justice.

Appellant, J.C. Trucking, Inc. (JCT), appeals the judgment of the district court affirming three decisions of the Public Utilities Commission (the Commission) respecting JCT's application for a certificate of public convenience and necessity. The Commission granted JCT's application but simultaneously amended a previously issued permit authorizing JCT to provide services as a contract carrier. We reverse.

## I

On December 19, 1985, JCT filed an application with the Commission for a certificate of public convenience and necessity to operate as a common carrier to provide scheduled service of general commodities "between facilities owned or controlled by Target Stores, Inc. located within a 10–mile radius of the intersection of 5th & Main Streets, Pueblo, Colorado, and between said facilities on the one hand, and, on the other hand, facilities owned or controlled by Target Stores Inc. located within the [S]tate of Colorado." At the time JCT was authorized to serve the Target Stores facility near Pueblo, Colorado, on a call and demand basis pursuant to Permit No. B–860 & I, which permit authorized JCT to operate as a contract motor vehicle carrier within the State of Colorado on an unrestricted basis for the purpose of transporting commodities.[1] JCT's application contained the following statement:

Applicant holds no authority duplicating in any respect the authority sought here-

in.... However, Applicant is the owner and operator of Permit No. B–860 & I, which Permit is very broad, both commodity-wise and territory-wise.... If the Commission determines that the authority sought herein by Applicant duplicates to any significant extent the authority contained in Permit No. B–860 & I, Applicant consents to the amendment of said Permit to the extent required to eliminate said duplication.

Because all parties initially protesting the application withdrew their protests, no hearing was held on JCT's application. *See* § 40–6–109(5), 17 C.R.S. (1984). On July 1, 1986, in decision No. C86–848, the Commission granted the application.[2] However, the decision contained the following statements:

Applicant presently holds Contract Carrier Permit No. B–860 & I which duplicates the authority sought in this Application. Permit No. B–860 & I will be amended to eliminate this duplication.

. . . .

The full and complete authority under Contract Carrier Permit No. B–860 & I shall be as follows:

"Intrastate authority is not restricted (except as herein noted).

*RESTRICTION:* Restricted against providing service to and from the facilities of Target Stores, Incorporated, located approximately five miles east of Pueblo, Colorado. Extension to intrastate authority to include the right

---

1. Permit No. B–860 & I stated in full as follows:
   INTRASTATE AUTHORITY: NOT RESTRICTED
   INTERSTATE AUTHORITY: BETWEEN ALL POINTS IN COLORADO AND THE COLORADO STATE BOUNDARY LINES WHERE ALL HIGHWAYS CROSS SAME IN INTERSTATE COMMERCE, ONLY, SUBJECT TO THE PROVISIONS OF THE FEDERAL MOTOR CARRIER ACT OF 1935, AS AMENDED. EXTENSION TO INTRASTATE AUTHORITY: TO INCLUDE THE RIGHT TO TRANSPORT GENERAL COMMODITIES, FROM POINT TO POINT WITHIN THE CITY AND COUNTY OF DENVER, STATE OF COLORADO.

2. The certificate of public convenience and necessity issued by the Commission stated as follows:

Transportation—on schedule—of
General commodities
Between the facilities owned or controlled by Target Stores, Incorporated, located within a 10–mile radius of the intersection of 5th and Main Streets in Pueblo, Colorado, and between said points, on the one hand, and on the other hand, the facilities owned or controlled by Target Stores, Incorporated, located within the State of Colorado.
RESTRICTION: This Certificate is restricted against providing service to or from points in the Counties of El Paso, Boulder, Phillips, Logan, Morgan, or Sedgwick, State of Colorado.

to transport general commodities from point to point within the City and County of Denver, State of Colorado. Interstate Authority

Between all points in Colorado and the Colorado State boundary lines where all highways cross same in interstate commerce, only, subject to the provisions of the Federal Motor Carrier Act of 1935, as amended."

On July 9, 1986, JCT's attorney sent a letter to the Commission stating in pertinent part as follows:

[M]y client, above-named, and I recognize that the grant of the captioned application will create overlapping authority in my client. Accordingly, the Commission is hereby authorized to amend my client's Permit No. B–860 & I by adding to it the following:

"Restricted against providing service to or from facilities owned or controlled by Target Stores, Inc., located within a ten-mile radius of the intersection of 5th and Main Streets, Pueblo, Colorado."

On July 25, 1986, JCT filed a request for reconsideration of decision No. C86–848 based on its realization that the broad language of the restriction placed on Permit No. B–860 & I had the effect of precluding JCT from providing call and demand service to the Pueblo Target facility and precluded JCT from providing any service between the Target facility and points in El Paso, Boulder, Phillips, Logan, Morgan and Sedgwick Counties. The request for reconsideration stated that JCT never intended this result and that the result was "probably not intended by the Commission."

On August 12, 1986, in decision No. C86–1027, the Commission amended decision No. C86–848 by modifying the restriction placed on JCT's permit to authorize call and demand service to and from the six named counties and the Pueblo Target facility. However, the Commission refused

to remove the restriction prohibiting JCT from providing call and demand service between all other counties and the Pueblo Target facility. JCT again sought modification of the Commission's decision, which request was denied on September 24, 1986, in decision No. C86–1265.

JCT sought and obtained review of the Commission's decisions in the Denver District Court, pursuant to section 40–6–115, 17 C.R.S. (1984). The district court held that the effect of the restriction placed upon JCT's contract permit "was to eliminate an alleged duplication between the authority granted to petitioner as to the scheduled common carrier [certificate] and the authority already possessed by petitioner as a call and demand operations carrier." Relying on *Red Ball Motor Freight, Inc. v. Public Utilities Commission,* 185 Colo. 438, 525 P.2d 439 (1974), the district court concluded that the Commission had authority "to prevent a granting of overlapping authority when issuing common carrier certificates" and that the restriction placed on JCT's permit was reasonable.

## II

JCT argues that the Commission erred in restricting Permit No. B–860 & I because, contrary to the conclusions of the Commission, the unrestricted authority granted by that permit to provide call and demand service within Colorado did not duplicate the authority to provide scheduled service to the Pueblo Target facility granted by the certificate of public convenience and necessity. We conclude that the Commission acted arbitrarily and in excess of its authority in restricting JCT's contract permit in the circumstances of this case.[3]

While findings of the Commission supported by the evidence may not be set aside, findings of the Commission not supported by evidence cannot be upheld on appeal. *See Peoples Natural Gas Div. v.*

---

**3.** Section 40–6–115(3), 17 C.R.S. (1984), provides that district court review of decisions of the Commission "shall not extend further than to determine whether the commission has regularly pursued its authority ... and whether the decision of the commission is just and reason-

able and whether its conclusions are in accordance with the evidence." Section 40–6–115(5), 17 C.R.S. (1984), provides for appellate review by this court of the final judgment of a district court on review of any Commission decision.

*Public Utils. Comm'n,* 698 P.2d 255, 262 (Colo.1985). In the present case, the Commission made no specific factual findings in support of its conclusion that the authority granted by the certificate duplicated the authority granted by the permit. The only evidence before the Commission at the time it rendered decision No. C86–848 was the formal application of JCT, including an attached copy of Permit No. B–860 & I and JCT's statement that the authority requested did not duplicate any other authority granted to JCT by the Commission, and other pleadings. For this reason alone, the Commission's conclusion that the two authorities were duplicative must be set aside and the order amending the permit must be stricken.

■ In addition, section 40–11–110, 17 C.R.S. (1984), defining the Commission's authority to alter previously granted permits to provide contract carrier services, requires the holding of a hearing before such administrative action can be taken. *See Red Ball Motor Freight, Inc. v. Public Utils. Comm'n,* 185 Colo. 438, 441, 525 P.2d 439, 440 (1974); *Miller Bros. v. Public Utils. Comm'n,* 185 Colo. 414, 437, 525 P.2d 443, 455 (1974). In this case, the Commission altered JCT's permit without conducting any statutorily required hearing for such agency action;[4] without determining whether and, if so, in what manner JCT had violated any provisions of applicable statutes or administrative rules; without finding that JCT had exceeded or violated the authority it had been granted by its contract carrier permit; without any explanation for the conclusionary statement that the authority requested "duplicates" authority granted by the permit; and without stating what legislative or administrative provision prohibited the existence of duplicative authority. Such action does not constitute regular pursuit of the Commission's administrative authority and, therefore, cannot stand.[5] § 40–6–115(3), 17 C.R.S. (1984).

### III

#### A

JCT also argues that as a matter of law the contract carrier authority granted to it by Permit No. B–860 & I does not duplicate the common carrier authority granted to it by the certificate of public convenience and necessity issued July 1, 1986. In essence, JCT argues that under Colorado's legislative scheme regulating the conduct of motor vehicle carriers, call and demand service performed by Class B contract carriers can never be considered duplicative of scheduled service performed by common carriers.

This court has not had occasion to address this precise issue. Federal and state courts that have considered the question under statutory provisions peculiar to their respective jurisdictions have recognized fundamental differences between scheduled services and non-scheduled or call and demand services. *See, e.g., Russell Transfer, Inc. v. United States,* 547 F.2d 231, 233 (4th Cir.1976); *Tidewater Express Lines v. United States,* 278 F.Supp. 561, 561–64 (D.Md.1968); *Brady Transfer & Storage Co. v. United States,* 80 F.Supp. 110, 115–17 n. 4 (S.D.Iowa), *aff'd per curiam,* 335 U.S. 875, 69 S.Ct. 239, 93 L.Ed. 418 (1948); *Nebraska State Ry. Comm'n v. Seward Motor Freight, Inc.,* 188 Neb. 223, 228, 196 N.W.2d 200, 205, *cert. denied,* 409 U.S. 1028, 93 S.Ct. 464, 34 L.Ed.2d 321 (1972); *North Carolina Utils. Comm'n v. Youngblood Truck Lines,* 248 N.C. 625, 628–30, 104 S.E.2d 199, 202–03 (1958).

We must first observe that the phrase "duplicative authority" does not appear in any statutory provision. However, be-

---

**4.** The Commission need not require an evidentiary hearing respecting an application for an initial certificate of public convenience and necessity if no person or entity protests such application. § 40–6–109(5), 17 C.R.S. (1984). JCT does not suggest that the Commission's order granting the application is invalid.

**5.** The Commission argues that JCT in effect waived its statutory rights to protest the restriction by means of its letter of July 9, 1986. However, JCT requested reconsideration of that order within the applicable statutory time period. Under these circumstances, we find no waiver by JCT of its right to protest the Commission's alteration of its permit.

cause the Commission has been granted broad constitutional and statutory authority, *see* Colo. Const., art. XXV; § 40-2-108, 17 C.R.S. (1984); *Public Utils. Comm'n v. Colorado Motorway, Inc.*, 165 Colo. 1, 7, 437 P.2d 44, 46 (1968), its rules and regulations command careful attention in any effort to ascertain the policy of this state with respect to the regulation of motor vehicle carriers or any other public utility.

Prior to 1969, the Commission by rule prohibited private carriers also holding a certificate of convenience and necessity from transporting freight under more than one of such authorities on the same vehicle or combination of vehicles at the same time. Rule 8, 4 C.C.R. 723-11 (19—). In 1969, the General Assembly revised the statutory provisions regulating motor vehicle carriers. One consequence of the 1969 legislation was the substitution of the concept of "contract carrier" for the concept of "private carrier" previously defined by the motor vehicle statutes. Ch. 267, sec. 72, § 115-11-17, 1969 Colo.Sess.Laws 963 (now codified at § 40-11-117, 17 C.R.S. (1984)). *See Denver Cleanup Serv., Inc. v. Public Utils. Comm'n*, 192 Colo. 537, 561 P.2d 1252 (1977).

The 1969 legislative program contained the following provision:

**Authority to commingle freight.** A motor vehicle carrier which owns, operates, or exercises operating rights, whether interstate or intrastate, or both, under a certificate as a common carrier, and which also owns, operates, or exercises operating rights under a permit as a contract carrier by motor vehicle shall have the right to utilize the same equipment for transporting property at the same time under the authorities granted by both the certificate and the permit, but whenever the permit and certificate authorize duplicating transportation rights, the carrier shall perform such transportation under the authority granted by the certificate.

Ch. 268, sec. 1, § 115-9-21, 1969 Colo.Sess. Laws 965 (now codified at § 40-10-119, 17 C.R.S. (1984)). This statute in effect nullified Rule 8 and the policy represented thereby, and regulations of the Commission issued subsequent to 1969 governing contract carriers do not contain a provision similar to Rule 8.[6]

This court has long recognized that under the 1969 statutory scheme a person or entity may simultaneously hold a certificate of public convenience and necessity and a permit authorizing service as a contract carrier. *See Northwest Transport Serv., Inc. v. Public Utils. Comm'n*, 197 Colo. 437, 593 P.2d 1366 (1979); *Red Ball Motor Freight, Inc. v. Public Utils. Comm'n*, 185 Colo. 438, 525 P.2d 439 (1974); *Miller Bros. v. Public Utils. Comm'n*, 185 Colo. 414, 525 P.2d 443 (1974). Thus, the mere fact that JCT held a permit authorizing unrestricted call and demand contract service cannot support any presumption or conclusion that it cannot simultaneously possess a certificate authorizing scheduled common carrier service. The Commission in essence asserts that an exception to this principle exists to the extent the authorities granted by a certificate and a permit in fact duplicate each other.[7]

**6.** The Colorado Code of Regulations contains three sets of regulations purportedly governing private and contract carriers: 4 C.C.R. 723-11 (19—) (Private Carriers by Motor Vehicle); 4 C.C.R. 723-12 (1976) (Contract Carriers by Motor Vehicle); and 4 C.C.R. 723-23 (1986) (Contract Carriers by Motor Vehicle). The private carrier rules were in all probability superseded by the 1976 contract carrier rules, although the 1976 rules do not refer to the private carrier rules. To further complicate the matter, according to the introduction to the 1986 contract carrier rules, the only purpose of these rules is to update the private carrier rules. The 1986 rules do not refer to the 1976 rules.

**7.** It must initially be observed that neither the General Assembly by statute nor the Commission by rule has defined the terms "duplicating operating rights" and "overlapping operating rights." Commission rules regarding transfer, consolidation, merger or acquisition of operating rights do refer to the concept of duplicative authority. An applicant for a transfer of common carrier operating rights must establish that the transfer will not result in the "common control or ownership of duplicating or overlapping operating rights unless it be agreed by the parties that the Commission may cancel any such duplication or overlapping operating rights unless the Commission finds that such duplica-

JCT argues that, under the statutory scheme adopted by the General Assembly, authority to provide scheduled service must be deemed distinct from authority to provide call and demand service. In defining what traditionally have been referred to as "common" carriers, the General Assembly has used the following terminology:

(a) "Motor vehicle carrier" means every person, lessee, trustee, receiver, or trustee appointed by any court whatsoever owning, controlling, operating, or managing any motor vehicle used in serving the public in the business of the transportation of persons or property, including sludge and fly ash, but not including ashes, trash, waste, rubbish, garbage, or industrial waste products or any other discarded materials, for compensation as a common carrier over any public highway between fixed points or over established routes or otherwise, whether such business or transportation is engaged in or transacted by contract or otherwise....

(b) The fact that any such person carries on his operations either in whole or in part between substantially fixed points or over established routes, or under contracts with more than one person, or by making repeated or periodical trips shall be prima facie evidence that such person is a motor vehicle carrier and subject to the provisions of this article.

Section 40–10–101(4)(a)–(b), 17 C.R.S. (1984).

The General Assembly has defined "contract" carriers in a separate article, as follows:

"Contract carrier by motor vehicle" means every corporation, person, firm, association of persons, lessee, or trustee or any receiver or trustee appointed by any court, other than motor vehicle carriers as defined by section 40–10–101(4)(a), owning, controlling, operating, or managing any motor vehicle in the business of transporting persons or the property of others or of transporting sludge and fly ash to and from disposal sites, for compensation or hire, over any public highway of this state between fixed points or over established routes or otherwise, by special contract or otherwise....

Section 40–11–101(3), 17 C.R.S. (1984).

Contract carriers are then divided into two classes, as follows:

(a) Class A contract carriers embrace all contract carriers by motor vehicle operating over substantially regular or established routes or between substantially fixed termini or to a fixed terminus;

(b) Class B contract carriers embrace all contract carriers by motor vehicle which do not operate over substantially regular or established routes or between substantially fixed termini.

Section 40–11–101(9)(a)–(b), 17 C.R.S. (1984). Although these statutory provisions do establish distinctions between contract carriers and common carriers and provide for Commission regulation of both classes of carrier, they do not permit any precise delineation of the distinctive features of contract carriers. *See Denver Cleanup*, 192 Colo. at 539–40, 561 P.2d at 1253.

Other statutory provisions describing services provided by motor vehicle carriers further frustrate efforts to ascertain clear legislative guidelines. For example, routes over which carriers may transport goods or persons are variously described as follows:

(a) "between fixed points or over established routes or otherwise" (section 40–10–101(4)(a), defining "common carriers," and section 40–11–101(3), defining "contract carriers");

(b) "between substantially fixed points or over established routes" (section 40–10–101(4)(b), creating an evidentiary rule

---

tion or overlap is in the public interest or is immaterial." Rule 2(d)(4), 4 C.C.R. 723–8 (1974). An applicant for a transfer of contract carrier operating rights must establish that the transfer will not result in the "common control or ownership of duplicating or overlapping operating rights, or that such duplication or overlap is in the public interest." Rule 2(d)(3), 4 C.C.R. 723–12 (1976); *see also* Rule 2(e)(4), 4 C.C.R. 723–23 (1986); Rule 6, 4 C.C.R. 723–11 (19—). The Commission's rules contain no similar requirement for applicants seeking new operating authority.

applicable to the status of certain carriers); and

    (c) "over substantially regular or established routes or between substantially fixed termini or to a fixed terminus" (section 40–11–101(9)(a)–(b), defining the two classes of contract carriers).[8]

The inconsistent language of these statutes undermines the suggestion that questions concerning duplicating or overlapping authority may be resolved by statutory construction. For example, the broad language of section 40–10–101(4)(a) may be construed to permit the Commission to issue certificates of public convenience and necessity to common carriers granting such carriers authority to perform call and demand service. *See Eveready Freight Serv., Inc. v. Public Utils. Comm'n*, 167 Colo. 577, 449 P.2d 642 (1969) (based on predecessor to current statutory scheme). It might also be argued that, pursuant to the "or otherwise" language of section 40–10–101(4)(a), the Commission has authority to grant both common carriers as well as Class B contract carriers authority to provide call and demand services on a contract basis. Under this view of the statutory scheme, the status of a motor vehicle carrier as a "contract" or a "common" carrier provides no firm basis for distinguishing the authority of such entity.

### B

The rules adopted by the Commission for the regulation of common and contract carriers similarly provide no basis for determining whether a particular authority duplicates another authority on the basis of the status of a carrier. Assuming, without deciding, that the Commission has established a policy prohibiting duplicative authority applicable to persons or entities

seeking new authority, and assuming further, again without so deciding, that such policy is not contrary to the pro-competitive policies embodied in the present statutory scheme governing the regulation of motor vehicle carriers, *see Denver Cleanup Serv., Inc. v. Public Utils. Comm'n*, 192 Colo. 537, 540, 561 P.2d 1252, 1253 (1977), it remains to be determined whether the authority granted JCT by Permit No. B–860 & I may, consistent with applicable case law, be considered duplicative of the authority sought in its application for a certificate of public convenience and necessity.[9]

The permit as initially issued authorized JCT to provide call and demand contract service throughout the State of Colorado. That contract service is not conditioned on any concept of public need, but rather may be provided or withheld as JCT's private interests dictate. *See Id.; Miller Bros. v. Public Utils. Comm'n*, 185 Colo. 414, 422, 525 P.2d 443, 446 (1974); *Ward Transport, Inc. v. Public Utils. Comm'n*, 151 Colo. 76, 81–82, 376 P.2d 166, 169 (1962). The unrestricted service is not limited to any specific territory or any particular customer. It is, however, limited to call and demand operations pursuant to contract, and JCT is subject to regulation by the Commission as a Class B contract carrier.

The certificate of public convenience and necessity requested by JCT subjects JCT to the rules and regulations of the Commission affecting common carriers. The authority under the certificate permits JCT to provide scheduled service pursuant to lists posted with the Commission and charges approved by the Commission, as well as to provide other services necessary to further the needs and convenience of the public. The service may be provided only as speci-

---

**8.** The General Assembly has defined the terms "fixed points" and "established route" in the article governing common carriers as follows:

    (2) "Fixed points" and "established route" mean points or a route between or over which any motor vehicle carrier usually or ordinarily operates or holds out to operate any motor vehicle, even though there may be departures from such points or route, whether such departures are periodic or irregular.

Section 40–10–101(2), 17 C.R.S. (1984).

**9.** The Commission assumes that even in the absence of any express finding that the two authorities duplicate each other, the decisions here may be interpreted to imply such a finding. The conclusion that the authorities are duplicative is precisely that—a conclusion. We have already noted that the absence of any factual findings to support such conclusion requires reversal of the Commission's decision to alter the terms of the permit.

fied by tariffs and schedules posted with and approved by the Commission. *See* Rule 15(b), 4 C.C.R. 723–8 (1974).

In *Eveready Freight Services, Inc. v. Public Utilities Commission,* 167 Colo. 577, 449 P.2d 642 (1969), we had occasion to consider the differences between call and demand service and scheduled service in an opinion reversing the district court's affirmance of the Commission's denial of a tariff application filed by a common carrier. At the time it applied for the tariff, Eveready had a common carrier certificate authorizing call and demand service to haul sodium silicate for American Metals Climax between its mine at Climax, Colorado, and its operation at Urad Mine near Empire, Colorado. Another common carrier protested Eveready's application, which requested authority for the transportation of sodium silicate from Climax to the Urad Mine. The Commission determined that a restriction contained in Eveready's existing certificate prohibited the proposed operation.

In reversing the Commission's decision, we observed the following basic distinction between scheduled service and call and demand service:

> It seems clear to us that any definition of "scheduled operations" must entail the concept of service on a regular time schedule previously announced as to time of departure and arrival between definitely established points regardless of whether there are passengers or freight to be carried. It is because a scheduled carrier must operate its equipment— whether fully loaded or not—that distinguishes it from the common carrier offering only call and demand service; and the risks and burdens entailed in such "scheduled operation" are what entitles the former carrier to protection. In the instant case, we hold that it is not enough to obtain the protection afforded by the Commission that the carrier arrive and depart at the times and only on days that services are required.

*Eveready,* 167 Colo. at 581, 449 P.2d at 644 (citations omitted). This fundamental distinction between scheduled service and call and demand service was cited in *Bethke v. Edson Express, Inc.,* 459 F.Supp. 1374, 1380 (D.Colo.1978), in an opinion indicating that authority for call and demand service necessarily precludes operation on a scheduled basis.

The Commission suggests that the services are duplicative because the certificate relates to the same "territory" as the permit. It relies upon *Red Ball Motor Freight, Inc. v. Public Utilities Commission,* 185 Colo. 438, 525 P.2d 439 (1974), for this distinction. Our decision in *Red Ball* affirmed a Commission decision to issue a certificate of convenience and necessity but reversed a Commission decision to revoke a prior contract carrier permit without compliance with statutorily required notice and hearing provisions. Both the certificate and the permit in that case authorized scheduled service, thus distinguishing it from the circumstances here presented.

The Commission also contends that in *Northwest Transport Service, Inc. v. Public Utilities Commission,* 197 Colo. 437, 593 P.2d 1366 (1979), this court in effect rejected the argument advanced by JCT here. We do not so read *Northwest Transport.* That opinion carefully analyzed the terms of a permit and of a certificate as well as the language of a controlling Commission decision. We did recite that the applicant argued that "contract carriage and common carriage were mutually exclusive by statutory definition." *Northwest Transport,* 197 Colo. at 439–40, 593 P.2d at 1368. We observed that the statutes "merely indicate that permits and certificates confer different types of authorization." *Id.*

The certificate in question in *Northwest Transport* prohibited the carrier from providing common carrier scheduled service. The permit authorized contract carrier service not over substantially regular or established routes. Both documents as issued contained a provision stating that a Commission decision suspended all operations under the permit to the extent such operations duplicated authority under the certificate as to territory and commodities. The

circumstances of that case are quite distinct from those presented here.[10]

While we reaffirm our observation in *Eveready* that there is a basic distinction between scheduled service and call and demand service, we are not prepared to hold that because of that distinction the Commission may never conclude that a particular Class B permit impermissibly duplicates or overlaps authority granted by a particular certificate granting the right to perform scheduled common carrier service. We do conclude, however, that in this case the Commission erred in imposing a restriction on Permit No. B–860 & I in the absence of any evidence that the call and demand service authorized thereby duplicates the scheduled services requested in JCT's application for a certificate of public convenience and necessity.

### IV

The judgment of the district court is reversed and the case is remanded to that court with directions to reverse decision No. 86CV18336 and to remand the case to the Commission with directions to remove the restriction it placed upon Permit No. B–860 & I.

QUINN, C.J., does not participate.

---

**10.** In footnote 3 of *Northwest Transport*, 197 Colo. at 440, 593 P.2d at 1368, we suggested that had the case arisen subsequent to the General Assembly's adoption of § 40–10–119, 17 C.R.S. (1973), that statutory provision might have resolved the issue. The statute, now codified as § 40–10–119, 17 C.R.S. (1984), provides that "whenever the permit and certificate authorize duplicating transportation rights, the carrier shall perform such transportation under the authority granted by the certificate." This provision recognizes that identical services may be authorized by a common carrier certificate and a contract carrier permit held by a single carrier and provides that in such circumstance the services shall be performed under the terms of the certificate.