**SALIDA TRANSFER COMPANY, a Colorado corporation, and J.C. Trucking, Inc., a Colorado corporation, Plaintiffs–Appellants,**

v.

**The PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO, Defendant–Appellee.**

**No. 89SA184.**

Supreme Court of Colorado,
En Banc.

June 11, 1990.

Jones, Meiklejohn, Kehl & Lyons, Leslie R. Kehl, Duane R. Gall, Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This is an appeal from the judgment of the district court affirming the Public Utilities Commission's decision restricting the contract carrier permit of appellant J.C. Trucking, Inc. When it approved the transfer of a common carrier certificate of authority from appellant Salida Transfer Company to J.C. Trucking, the Commission ordered that a restriction coextensive with the authority of the certificate be placed on the permit. Appellants commenced an action in the district court for judicial review, and the court affirmed the Commission's order. We affirm the judgment of the district court.

I

Salida Transfer Company (Salida Transfer) is a Colorado corporation and is both a motor vehicle common carrier under section 40–10–101(4)(a), 17 C.R.S. (Supp. 1989), and a contract carrier by motor vehicle, as defined by section 40–11–101(3), 17 C.R.S. (Supp.1989).[1] Salida Transfer is the owner of certificate of public convenience and necessity No. 482 & I,[2] and contract

---

1. A common carrier "must indiscriminately accept and carry passengers or property between fixed points or over established routes." *Denver Cleanup Serv., Inc. v. Public Utils. Comm'n*, 192 Colo. 537, 539–40, 561 P.2d 1252, 1253 (1977). Section 40–11–101(3) essentially defines a contract carrier as one that is not a common carrier. While a common carrier must convey for all desiring its transportation, a contract carrier owes an obligation only to its contract customers. *Denver Cleanup Serv., Inc.*, 192 Colo. at 540, 561 P.2d at 1253.

2. Certificate No. 482 & I, held by Salida Transfer, states:
   As follows: Transportation of freight from point to point within a radius of 20 miles of Salida, and to or from said radius to or from any point in the State of Colorado, subject to the following terms and conditions: (a) For the transportation of any and all commodities, except household goods, between points served singly or in combination by scheduled carriers, the applicant shall charge rates at least 20% higher than those charged by scheduled carriers. (b) The applicant shall not

carrier permit No. B–963. As the name suggests, Salida Transfer's operations are centered in Salida, Colorado.

J.C. Trucking is also a Colorado corporation, and the holder of common carrier certificate of public convenience and necessity No. 26612, and contract carrier permit No. B–860 & I.[3] Its principal office and headquarters are located in Denver.

In February 1987, Salida Transfer and J.C. Trucking entered into a purchase and sale agreement whereby J.C. Trucking agreed to purchase all of the assets, including the operating rights of Salida Trucking authorized by certificate No. 482 & I and permit No. B–963. The stated purchase price for the operating rights was $20,000, but the sale was conditioned on the Commission's approval of the transfer. *See* § 40–10–106, 17 C.R.S. (1984) (common carrier certificate may only be sold or assigned as authorized by Commission); § 40–11–104, 17 C.R.S. (1984) (contract carrier permit may only be sold or assigned if approved by Commission).

Salida Transfer and J.C. Trucking subsequently filed a transfer application before the Commission seeking authorization for the sale of Salida Transfer's operating rights.[4] No adverse parties intervened to protest the proposed transfers, except the staff of the Commission, and a hearing was set before an examiner. The appellants' verified "Transfer Application," states in part:

> 8. *Duplicating Authority.*
>
> J.C. does not seek duplicating authority as a result of the present acquisition and recognizes that present authorization as held under Permit B–963 would be overlapped in its entirety by the authority set forth in Permit B–860.
>
> With reference to the common carrier authorization held by J.C. Trucking, Inc. and that being obtained from Salida Transfer, it is not believed that there is overlap.

In a recommended decision dated January 29, 1988, the examiner generally approved the transfer of the certificate and permit, but with some restrictions. Citing Rule 2(d)(4), 4 C.C.R. 723–8 (1977) (rules applicable to all common carriers by motor vehicle),[5] and Rule 2(e)(3), 4 C.C.R. 723–23 (1986) (rules applicable to contract carriers

---

operate on schedule between any points. (c) That the applicant shall not be permitted to establish a branch office, or to have an agent employed in any other town or city than Salida, for the purpose of developing business. Transportation of freight between all points in Colorado and the Colorado State boundary lines where all highways cross same in interstate commerce, only, subject to the provisions of the Federal Motor Carrier Act of 1935, as amended.

**3.** Permit No. B–860 & I, held by J.C. Trucking, states:

Intrastate authority is not restricted (except as here noted).
Extension to intrastate authority to include the right to transport general commodities from point to point within the City and County of Denver, State of Colorado.
Restriction: Restricted against providing service to or from the facilities of Target Stores, Incorporated. Located approximately five miles east of Pueblo, Colorado, except service to or from points in the Counties of El Paso, Boulder, Phillips, Logan, Morgan, or Sedgwick, State of Colorado.
Interstate authority.

Between all points in Colorado and the Colorado State boundary lines where all highways cross same in interstate commerce, only. Subject to the provisions of the Federal Motor Carrier Act of 1935, as amended.

**4.** Actually, two applications were filed, one for transfer of the certificate and one for transfer of the permit. The two applications were consolidated and have at all times been considered together.

**5.** Rule 2(d), 4 C.C.R. 723–8 (1977), states in pertinent part:

(d) An application for transfer shall be made in duplicate and shall contain all information concerning the transferee or transferees now or hereafter required in an original application. Applicants for a transfer of operating rights must further establish that:

. . . .

(4) The transfer will not result in the common control or ownership of duplicating or overlapping operating rights unless it be agreed by the parties that the Commission may cancel any such duplication or overlapping operating rights unless the Commission finds that such duplication or overlap is in the public interest or is immaterial.

by motor vehicle),[6] the examiner's recommended decision stated:

Transferor, Salida Transfer Company, is hereby authorized to transfer PUC No. 482 & I as well as Permit B–963 to J.C. Trucking, Inc., *subject to the cancellation of Permit B–963, and the imposition of a restriction on transferee's Permit B–8[6]0 & I against the operations authorized by PUC No. 482 & I.*

(Emphasis added.) The effect of the decision was to prohibit J.C. Trucking from any operations as a Class B contract carrier under permit No. B–860 & I within the territory delineated in certificate No. 482 & I, i.e., "[t]ransportation of freight from point to point within a radius of 20 miles of Salida, and to or from said radius to or from any point in the State of Colorado." Thus any carriage of commodities within the twenty-mile radius of Salida, or to or from inside that circle to or from any point in the state would necessarily be as a common carrier under, and subject to the restrictions of, certificate No. 482 & I. As stated by the Commission in an "Errata Notice" dated May 17, 1988, permit No. B–860 & I was to be "[r]estricted against the transportation of freight on call and demand from point to point within a radius of 20 miles of Salida, and to or from said radius to or from any point in the State of Colorado."

The Commission approved the recommended decision of the examiner over the written exceptions of the appellants, and the appellants sought judicial review in the district court under section 24–4–106, 10A C.R.S. (1988), and section 40–6–115, 17 C.R.S. (1984 & 1989 Supp.).[7] The district court affirmed the decision of the Commis-

sion, and an appeal was prosecuted to this court. *See* § 40–6–115(5), 17 C.R.S. (1984).

## II

▉ The appellants initially contend that the district court's judgment affirming the Commission's decision must be reversed because the administrative record is inadequate, as a matter of fact, to establish that the operating rights granted by the common carrier certificate and the contract carrier permit overlap or are duplicated. This argument is apparently made for the first time on appeal to this court, since the appellants informed the district court in their opening brief that:

The record in this case contains no lengthy transcripts. *The facts are undisputed. The only issue presented is an issue of law, not of fact:* whether, in seeking to restrict J.C.'s operating rights under Contract Carrier Permit No. B–860 & I to avoid a perceived duplication of the rights to be obtained by J.C. under Common Carrier Certificate PUC No. 482 & I, the PUC has or has not correctly interpreted its own rules and the controlling statutory law. Because the challenged administrative action *is based wholly on legal, as opposed to factual determinations by the PUC,* those determinations are not entitled to the deference normally accorded to administrative decisions when the underlying facts are in dispute.

(Emphasis added.) Relying on *J.C. Trucking, Inc. v. Public Utils. Comm'n,* 776 P.2d 366 (Colo.1989), appellants now "contend that the PUC's action was arbitrary because no evidence of actual 'duplication or overlap' appears in the record...."

---

**6.** Rule 2(e), 4 C.C.R. 723–23 (1986), provides in part:

(e) An application for transfer shall be made in duplicate and shall contain all information concerning a transferee required in an original application. Applicants for a transfer of operating rights must further establish that:
....
(3) The transfer will not result in the common control or ownership of duplicating or overlapping operating rights, or that any overlapping or duplicating rights will be cancelled.

Rule 2(e) became effective October 17, 1988, although the contract carrier rules were adopted in 1986. The prior rule governing the transfer of overlapping or duplicating contract carrier operating rights was similar to Rule 2(e)(3). *See* Rule 2(d)(3), 4 C.C.R. 723–12 (1977).

**7.** The appellants acquiesced in the Commission's decision to cancel permit No. B–963 because it duplicated or overlapped J.C. Trucking's contract carrier permit No. B–860 & I, and have not sought judicial review of that part of the Commission's order.

They point out that we reversed the conclusory findings of the Commission that a permit authorizing *call and demand* contract services duplicated a requested certificate authorizing *scheduled* common carrier services. *J.C. Trucking, Inc.*, 776 P.2d at 370, 372 n. 9. We deemed the "fundamental" differences between scheduled and unscheduled services critical in reaching our decision that the record contained insufficient evidence to support the Commission's conclusion that the call and demand contract services duplicated the requested scheduled common carrier certificate. *Id.* at 373–74.[8] Similarly, we distinguished *Red Ball Motor Freight, Inc. v. Public Utilities Commission*, 185 Colo. 438, 525 P.2d 439 (1974), on the basis that "[b]oth the certificate and the permit in that case authorized scheduled service...." *J.C. Trucking, Inc.*, 776 P.2d at 373.

In this case, both the certificate and permit authorize unscheduled, or call and demand service. The statutory difference between contract carriage and common carriage is in the type of authorization only, and does not imply that there can be no duplication in operating authority. *Northwest Transport Serv., Inc. v. Public Utils. Comm'n*, 197 Colo. 437, 440, 593 P.2d 1366, 1368 (1979). A comparison of the operating rights conferred by the certificate and those authorized by the permit reveals that some of the operating rights under the permit are duplicated by the certificate. If the contract carrier permit was not restricted, J.C. Trucking would be authorized, both as a common carrier and as a contract carrier, to transport the same goods within the same territory, along the same unscheduled routes.[9] *See id.* ("In light of Northwest's ability to transport essentially the same commodities to the same places, albeit under slightly different terms, the PUC's finding ... that the permit and certificate confer duplicating operating authority is justified.").

We also noted in *J.C. Trucking, Inc.* that while the Commission had not adopted any rules or regulations pertaining to overlapping or duplicating certificates and permits governing carriers' applications for operating authority, the Commission has adopted rules governing requests for transfers of operating authority. 776 P.2d at 370 n. 7.[10] In this case, Salida Transfer and J.C. Trucking applied for a transfer of operating authority. The rules governing transfers of operating authority place the

---

**8.** We differentiated scheduled service from call and demand service in *J.C. Trucking, Inc.*, 776 P.2d at 373 (quoting *Eveready Freight Service, Inc. v. Public Utilities Commission*, 167 Colo. 577, 581, 449 P.2d 642, 644 (1969)), as follows:

> "It seems clear to us that any definition of 'scheduled operations' must entail the concept of service on a regular time schedule previously announced as to time of departure and arrival between definitely established points regardless of whether there are passengers or freight to be carried. It is because a scheduled carrier must operate its equipment— whether fully loaded or not—that distinguishes it from the common carrier offering only call and demand service; and the risks and burdens entailed in such 'scheduled operation' are what entitles the former carrier to protection."

**9.** Section 40–10–119, 17 C.R.S. (1984), presumably would require any such carrying of goods to be performed under the common carrier certificate rather than the contract carrier permit. The appellants maintain that section 40–10–119 evidences a legislative intent to permit overlapping or duplicating permits and certificates. This argument is considered in Part IV below.

**10.** We stated:

> Commission rules regarding transfer, consolidation, merger or acquisition of operating rights do refer to the concept of duplicative authority. *An applicant for a transfer of common carrier operating rights must establish that the transfer will not result in the "common control or ownership of duplicating or overlapping operating rights unless it be agreed by the parties that the Commission may cancel any such duplication or overlapping operating rights unless the Commission finds that such duplication or overlap is in the public interest or is immaterial."* Rule 2(d)(4), 4 C.C.R. 723–8 (1974). An applicant for a transfer of contract carrier operating rights must establish that the transfer will not result in the "common control or ownership of duplicating or overlapping operating rights, or that such duplication or overlap is in the public interest." Rule 2(d)(3), 4 C.C.R. 723–12 (1976); *see also* Rule 2(e)(4), 4 C.C.R. 723–23 (1986); Rule 6, 4 C.C.R. 723–11 (19__). *The Commission's rules contain no similar requirement for applicants seeking new operating authority.*

*J.C. Trucking, Inc.*, 776 P.2d at 370 n. 7 (emphasis added).

burden on the carrier seeking the transfer to establish that there is no overlap or duplication. *Id.;* Rules 2(d)(4), 2(e)(3).[11]

We have previously stated that a carrier could operate as both a common carrier and a contract carrier *as long as there was no overlap in territory. Red Ball Motor Freight, Inc.,* 185 Colo. at 441, 525 P.2d at 440. On this record, the Commission could properly find that the certificate and permit overlap and duplicate operating rights on their face. In the absence of any evidence introduced by the appellants to the contrary, the Commission did not act arbitrarily in concluding that the appellants had not shown that the overlap or duplication was in the public interest or was immaterial. Rule 2(d)(4), 4 C.C.R. 723–8 (1977). Our review of an administrative decision of the Commission is limited to three concerns: "whether the Commission has regularly pursued its authority; whether its decision is just and reasonable; and whether the decision is supported by substantial evidence in the record viewed as a whole." *Colorado Office of Consumer Counsel v. Public Utils. Comm'n,* 786 P.2d 1086, 1091 (Colo.1990); *see also* § 40–6–115(5), 17 C.R.S. (1984).

The Commission's policy is to restrict overlapping or duplicating operating rights in order to prevent "a carrier from stockpiling operating rights, only to sell them later without regard to either public convenience or impact upon other carriers." *In re Application of Salida Transfer Co.,* No. R88–101, slip. op. at 5 (Colo. Public Utils. Comm'n Jan. 29, 1988) (recommended decision of Examiner Staliwe). It is no objection that the Commission could accomplish the same result by different methods so long as the means utilized are not unreasonable. We conclude that the Commission's decision to restrict the contract carrier permit of J.C. Trucking is supported by the record and must be upheld.

### III

The appellants maintain that the Commission has no rule governing the transfer of a common carrier certificate that duplicates or overlaps a contract carrier permit. The argument is that Rule 2(d)(4), 4 C.C.R. 723–8 (1977), is inapplicable since it only pertains to duplication between common carrier certificates, and Rule 2(e)(3), 4 C.C.R. 723–23 (1986), does not apply because it only governs overlap in contract carrier permits. The duplication in this case is between a certificate and a permit and thus falls within neither rule.

We reject this argument. Rule 1(a), 4 C.C.R. 723–8 (1977), states:

(a) These rules apply to all common carriers by motor vehicle ("Motor Vehicle Carriers"), as defined by 115–9–1(4), hereinafter referred to in these rules as common carrier. All such carriers shall at all times comply with these rules and all applicable statutes and laws of the State of Colorado.

Before the requested transfer, both Salida Transfer and J.C. Trucking were common carriers governed by Rule 2(d)(4). After the transfer, J.C. Trucking, the appellant whose contract carrier permit was restricted, remains a common carrier under Colorado law. Rule 2(d)(4) plainly applies to the transfer of a common carrier certificate. The rule is *not* limited to an overlap or duplication with another certificate. Rule 2(d)(4) states, "The transfer will not result in the common control or ownership of duplicating or overlapping *operating rights....*" (Emphasis added.) A permit defines the operating rights of a contract carrier. The appellants' contention that Rule 2(d)(4) does not apply is without merit.[12]

### IV

The appellants' final argument is that the Commission's action in this case is contrary to the will of the General Assembly,

---

11. The appellants dispute that the Commission rules cover overlapping or duplication between a common carrier certificate and a contract carrier permit. We address this argument in Part III below.

12. Because we find that Rule 2(d)(4) applies to the transfer of the certificate in this case, we need not determine whether Rule 2(e)(3), 4 C.C.R. 723–23 (1986), also applies.

and in particular to section 40–10–119, 17 C.R.S. (1984), which provides:

> **Authority to commingle freight.** A motor vehicle carrier which owns, operates, or exercises operating rights, whether interstate or intrastate, or both, under a certificate as a common carrier, and which also owns, operates, or exercises operating rights under a permit as a contract carrier by motor vehicle shall have the right to utilize the same equipment for transporting property at the same time under the authorities granted by both the certificate and the permit, *but whenever the permit and certificate authorize duplicating transportation rights, the carrier shall perform such transportation under the authority granted by the certificate.*

(Emphasis added.) We have noted that section 40–10–119 was a response by the General Assembly to former Commission Rule 8 which prohibited contract carriers also holding a common carrier certificate from transporting freight under more than one of the authorities in the same vehicle at the same time. *J.C. Trucking, Inc.,* 776 P.2d at 370. Whether freight may be commingled, and whether a carrier may own and operate under duplicating operating rights are two different issues.

The appellants would read this statute as a command of the legislature in favor of duplicating authority. We believe, however, that the statute only recognizes the possibility of the existence of duplicating operating rights under a permit and certificate. Rule 2(d)(4) which governs the transfer of common carrier operating rights also permits the overlap or duplication of operating rights if in the public interest or if immaterial. The Commission rule and section 40–10–119 are in harmony.

The Commission did not act arbitrarily or in conflict with the dictates of the General Assembly in imposing a restriction on the contract carrier permit as a condition of transfer of the certificate. Since the Commission's decision is supported by the record, we affirm the judgment of the district court.